[Cite as *State v. Crosby*, 2016-Ohio-571.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | |
| DEONDRE CROSBY | : | Case No. 15 CA 000011 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common
                            Pleas, Case No. 13CR000004



JUDGMENT:                   Affirmed



DATE OF JUDGMENT:           February 16, 2016



APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JASON R. FARLEY                         ERIC J. ALLEN
139 West 8th Street                     713 South Front Street
P.O. Box 139                            Columbus, OH  43206
Cambridge, OH  43725

*Farmer, P.J.*

{¶1} On January 3, 2013, the Guernsey County Grand Jury indicted appellant, Deondre Crosby, on two counts of aggravated murder in violation of R.C. 2903.01, one count of aggravated robbery in violation of R.C. 2911.01, and one count of aggravated burglary in violation of R.C. 2911.11. All the counts carried firearm specifications in violation of R.C. 2941.145. Said charges arose from a burglary and robbery of the apartment of Christopher Morrison. During the incident, Mr. Morrison and his friend, Justain Nelson, were shot and killed. Two co-defendants were involved in the commission of these offenses, Elgin Mitchell and James Whatley. It was alleged that appellant shot Mr. Morrison and Mr. Whatley shot Mr. Nelson.

{¶2} A jury trial commenced on March 10, 2015. The jury found appellant guilty of aggravated murder, complicity to commit aggravated murder, aggravated robbery, and aggravated burglary, along with the attendant firearm specifications. By judgment entry filed March 20, 2015, the trial court sentenced appellant to an aggregate term of life imprisonment with the possibility of parole after thirty years.

{¶3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶4} "APPELLANT'S RIGHT TO A FAIR CROSS SECTION OF JURORS GUARANTEED BY THE SIXTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATES BY THE FOURTEENTH WAS VIOLATED WHEN THE TRIAL COURT OVERRULED HIS MOTION REGARDING THE VENIRE"

II

{¶5}   "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVVERULED (SIC) APPELLANT'S TWO MOTIONS FOR DISCOVERY SANCTIONS."

III

{¶6}   "THE TRIAL COURT ERRED IN GIVING AN ACCOMPLICE INSTRUCTION WHEN THE STATE OF OHIO PROCEEDED AS IF THE DEFENDANT WERE A PRINCIPAL OFFENDER."

I

{¶7}   Appellant claims the jury venire did not provide him a fair cross section of jurors pursuant to *State v. Fulton,* 57 Ohio St.3d 120 (1991).  We disagree.

{¶8}   In *Fulton* at paragraph two of the syllabus, the Supreme Court of Ohio held the following:

> In order to establish a violation of the fair representative cross-section of the community requirement for a petit jury array under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant must prove: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process.  (*Duren v. Missouri* [1979], 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, applied and followed.)

{¶9}     After the completion of voir dire, defense counsel engaged in the following colloquy with the trial court (T. at 186-188):

THE COURT: All right.  And for the challenges, the challenge to the array requires a showing that they were not drawn in the ordinary course or proper manner and the jury should be set aside.  Now, the fact that there isn't a - - you said there weren't any African Americans in the array, counsel?  I don't have any basis for making that determination.  We don't have any basis for making that determination.  We don't use race in Guernsey County on the jury form.  How would you make that determination?

MR. JONES: Well, from stereotypes and looking at the jurors, sir, I didn't see any black people.

THE COURT: Well, you might not have looked carefully enough, counsel.  We might have had one that's in that category.

MR. JONES: Okay.  I didn't see anybody in the people that came in.

THE COURT: Well, I respectfully disagree with you.  You had one in the array.

MR. JONES: I must have missed it.

THE COURT: Well, that's fine.  But, now, can you allege in good faith as an officer of the court that there's any irregularity in the manner or - - of summonsing the jurors other than alleged - - not having a black on the jury?

MR. JONES: I have no offense to that.

THE COURT: Now, the standard of law, as you're aware, is that they are proportionate to the representative population from which they are drawn. They are drawn from the electorate of Guernsey County. Have you researched the - - the statistics of the census of Guernsey County for those that are shown to be black?

MR. JONES: Not recently, sir. It was back in October, maybe even September of last year when I last looked at those items.

***

THE COURT: All right. I believe the census shows between one and one-half percent of the population. So it would not be the exclusion of blacks from the jury from showing of one array where you may, in fact, have had a person of color if you wish to use that term. So there's no discrimination, counsel. And if you don't have any evidence, it's a very serious matter to raise.

{¶10}  The trial court overruled the challenge to the array.  T. at 189.

{¶11}  First, appellant is an African American and meets the first prong of the test as a "distinctive" group within the community.  Secondly, apart from defense counsel's claims, evidence was not produced demonstrating a lack of African Americans on the venire in relation to their percentage in the community.  *State v. McNeill,* 83 Ohio St.3d 438, 1998-Ohio-293.  Further, the trial court noted defense counsel's observations were inaccurate.  Lastly, with an African American population of 1.5% and the fact that 41 jurors were given the oath of voir dire, appellant did not produce any evidence of a systematic

exclusion in Guernsey County. The use of the voter registration database for jurors does not demonstrate a systematic exclusion, and appellant did not submit any evidence that the use of voter lists in Guernsey County caused any underrepresentation on the jury venire and is suspect as appellant would imply. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 103-106.

{¶12} Assignment of Error I is denied.

II

{¶13} Appellant claims the trial court erred in denying his motions for Crim.R. 16 sanctions as the state did not disclose its expert's report and therefore the expert's testimony should have been excluded. We disagree.

{¶14} A trial court's decision on discovery violations is reviewed under an abuse of discretion standard. *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966; *State v. Opp,* 3rd Dist. Seneca No. 13-13-33, 2014-Ohio-1138. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *State v. Adams,* 62 Ohio St.2d 151 (1980).

{¶15} Crim.R. 16 governs discovery and inspection. Subsection (K) governs expert witnesses and reports and states the following:

> An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure

under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

{¶16} In a motion for discovery sanctions filed March 2, 2015, appellant conceded that the state disclosed the identity of its expert, Robert Moledor, his curriculum vitae, and his PowerPoint presentation; however, a report was never submitted. Appellant argued a written report of Mr. Moledor's opinion was necessary:

Foreknowledge of Mr. Moledor's process and analysis would permit collaboration with the defense's expert witness. Without knowledge of the calculations and process of Mr. Moledor, it is impossible to know if his summaries and opinions are correct. Without knowledge of the analytical process he used, the defense expert cannot say whether the process is accepted in the scientific community. Without a detailed report of the processes, it becomes impossible for the defense to subpoena records to support or refute the expert's opinions and conclusions. Mr. Crosby's defense is prejudiced by the State's willful failure to disclose an expert report.

{¶17} On March 4, 2015, the state filed a memorandum contra and argued the following:

Subsequently, on or about September 16, 2014 the State notified prior counsel, Attorney Stone, of its intention to call Agent Moledor as a witness in this matter rather than Mr. Vallee. Agent Moledor's CV and his expert report consisting of a power point presentation and his conclusion was provided to counsel at that time. At no time between September 16, 2014 and March 2, 2015 did defense counsel make any request of the State of Ohio for a more detailed report. At no time between September 16, 2014 and March 2, 2015 did defense counsel file a motion to compel discovery of a more specific report from the proposed expert of the State of Ohio.

***

Here, there is no question but that the State of Ohio provided the proposed report and qualification of the expert well prior to twenty-one days prior to trial. That report includes the conclusion and opinion to be rendered by this witness. Defendant's motion acknowledges this. However, Defendant argues that the report provided does not satisfy the requirements of Rule 16(K) as it does not include the "calculations and processes of Mr. Moldor". However, Rule 16(K) does not require inclusion of such in a report rendered by the proposed expert witness. Instead, the rule requires a summary of the expert witness's "testimony, findings, analysis, conclusions **or** opinions". First, all of these items are not required as the sentence contains the word **"OR"** not **"AND"**. Here, the report provided includes a summary of the witness's testimony, findings, conclusion and opinion. It is

only the analysis that is not present. As the drafters of Criminal Rule 16 did not use the word AND in this provision it is abundantly clear that Rule 16(K) is not an absolute requirement for inclusion of all of those items listed therein. Instead, the requirement of production of a report was to put both parties on notice of the witness, his/her name and qualifications and a summary of what he/she would testify to.

{¶18} The trial court property concluded the fundamental argument about what constitutes a "report" could be resolved by a *Daubert* hearing.[1] A hearing was held on March 9, 2015. During the hearing, both experts for appellant and the state were present and were given the opportunity to testify and be cross-examined, and to listen to each other's testimony. March 9, 2015 T. at 46. The state argued the PowerPoint presentation was a summary of Mr. Moledor's testimony, with findings and conclusions, and constituted a report. *Id.* at 28, 41; State's Exhibit A. Appellant argued the PowerPoint presentation, titled "CAST Historical Cell Site Analysis" was not a report, but merely an exhibit with a one-time conclusion/opinion, and did not include any analysis leading up to the conclusion. *Id.* at 33, 35-36, 38.

{¶19} The state's expert witness, Mr. Moledor, was employed by the Columbus Division of Police and was "assigned to the FBI violent crime task force in the FBI cellular analysis team out of Washington D.C." *Id.* at 49. He was a CAST team member, which stands for "Cellular Analysis Survey Team," analyzing cellular call detail records. *Id.* at 52-53. He explained the process as follows (*Id.* at 55-56):

---

[1] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993).

And in the absence of realtime technology, we will look at historical call detail records, look at the first call in the morning, the last call at night, we'll look at the most frequently used towers, and we will analyze that information to make determinations as to where the most likely area that a person may be found at, even with a given period of time. Then we will go out with our search teams and attempt to locate those people.

{¶20} Mr. Moledor conducted an analysis of cellular phone records on a number of phones involved in the case. *Id.* at 58. He prepared a report and presentation of his findings via a PowerPoint presentation. *Id.* at 59; State's Exhibit A. The exhibit was disclosed in discovery. Mr. Moledor described each screen of his PowerPoint presentation and his accompanying analysis, and was cross-examined by defense counsel. Appellant's expert, Manfred Schenk, reviewed Mr. Moledor's PowerPoint presentation prior to preparing his contra opinion as to the scientific reliability of Mr. Moledor's report and conclusion. State's Exhibits Exhibits B and C.

{¶21} After some two hundred pages of testimony, the trial court permitted the testimony of Mr. Moledor and his report in part pursuant to Evid.R. 704. T. at 207-209.

{¶22} In reviewing the trial court's precise analysis of the testimony and excluding some parts of the report, coupled with defense counsel's cross-examination and Mr. Schenk's contra report, we find the trial court properly handled the issue of a Crim.R. 16(K) violation.

{¶23}  Upon review, we find the trial court did not abuse its discretion in denying the motions for sanctions.

{¶24}  Assignment of Error II is denied.

III

{¶25}  Appellant claims the trial court erred in giving a jury instruction on complicity as there was insufficient evidence to establish complicity and in fact, the state's theory of the case was that appellant was the shooter.  We disagree.

{¶26}  The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.  *State v. Martens,* 90 Ohio App.3d 338 (3rd Dist.1993); *Adams, supra.*  Jury instructions must be reviewed as a whole. *State v. Coleman,* 37 Ohio St.3d 286 (1988).

{¶27}  Complicity is set forth in R.C. 2923.03 as follows:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

{¶28}  The state argues appellant was aware that it had requested the complicity instruction via an October 14, 2014 filing.  The filing was a supplemental trial brief wherein the state put forth its request for a jury instruction on complicity.

{¶29}  The trial court granted the request at the conclusion of the case (T. at 1682):

> The Court finds the theory of complicity is broad enough here to apply.  The Court finds, however, that the bill of particulars only refers to it as along with co-defendants did plan and enter, and with the co-defendants did discharge multiple rounds.  The Court finds that that is broad enough for a complicity instruction.
>
> The Court finds, however, the jurors will clearly be advised by the Judge and no argument of counsel beyond that point would be permitted.  Complicity will be given as an instruction of law, as I find it is appropriate and broad enough to cover the facts and theories that have been argued.

{¶30}  From the record, it is clear that three persons were involved in the incident: appellant, Mr. Whatley, and Mr. Mitchell.  All three arrived near Mr. Morrison's apartment complex and exited the vehicle together.  T. at 1212-1213.  Mr. Whatley "rammed the door open" to Mr. Morrison's apartment and all three entered to rob him.  T. at 1215-1216.  In the course of the robbery, Mr. Morrison and Mr. Nelson were shot and killed by appellant and Mr. Whatley.  T. at 1216-1221.

{¶31}  Upon review, we do not find any abuse of discretion by the trial court in issuing the limited jury instruction on complicity and prohibiting additional argument on the issue.

{¶32}  Assignment of Error III is denied.

{¶33}  The judgment of the Court of Common Pleas of Guernsey County, Ohio is hereby affirmed.

By Farmer, P.J.

Gwin, J. and

Hoffman, J. concur.

SGF/sg 107