**[Cite as *State v. Burke*, 2025-Ohio-2426.]**

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Kevin W. Popham, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| MONTEKQUA A. BURKE | : | Case No. 24 CA 038 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:         Appeal from the Fairfield County
                                 Municipal Court, Case No.
                                 TRC2306038


JUDGMENT:                        Affirmed


DATE OF JUDGMENT:                July 8, 2025


APPEARANCES:

For Defendant-Appellant                 For Plaintiff-Appellee

Christopher T. Curley                   Andrew D. Semelsberger
107 North Main Street, Suite E          Assistant Prosecutor
Baltimore, Ohio 43105                   136 West Main Street
                                        Lancaster, Ohio 43130

*Gormley, J.*

**{¶1}**   Defendant Montekqua Burke was found guilty at a jury trial in Fairfield County on three misdemeanor charges, including a charge alleging that she operated a vehicle while she was under the influence of alcohol or drugs.  Finding no error in the trial court's proceedings, we now affirm.

**Facts and Procedural History**

**{¶2}**   At around 2:00 a.m. on a September day in 2023, a police officer in Pickerington, Ohio saw the driver of a vehicle commit several marked-lanes violations. The officer directed the driver of that vehicle to stop, and the officer then exited his cruiser and approached the driver's-side window of the stopped vehicle on foot.

**{¶3}**   As he walked toward the vehicle, the officer could see some movement taking place inside the vehicle, but — because the vehicle's windows were heavily tinted and the nighttime sky was dark — he could not tell what or who was moving.  Once he reached the driver's-side window, the officer saw that Burke was seated behind the steering wheel and that two male passengers were also inside the vehicle.

**{¶4}**   The officer suspected that one of those male passengers — the one who was sitting in the backseat — had been driving the vehicle before the traffic stop.  Burke, though, told the officer that she had been the only driver of the vehicle that morning, and both passengers confirmed her story.

**{¶5}**   The officer noticed that Burke's speech was slurred, and he asked her to step out of the vehicle.  As Burke did so, she momentarily lost her balance and leaned on the car door for support.

**{¶6}** While speaking with Burke as she stood near her vehicle, the officer detected the odor of an alcoholic beverage, and he observed that Burke's eyes were bloodshot. Burke refused to participate in any field-sobriety tests, and the officer placed her under arrest for the offense of OVI or operating a vehicle while under the influence of alcohol or drugs.

**{¶7}** At her jury trial several months later, Burke was found guilty on the OVI charge and on two other misdemeanor charges. After she was sentenced, she filed a timely appeal, and appellate counsel was then appointed for her.

**{¶8}** Burke's counsel, in accordance with *Anders v. California*, 386 U.S. 738 (1967), has filed a brief indicating that no colorable issues exist that might prompt this court to overturn Burke's conviction and sentence on the OVI charge. The appellate attorney also stated in the brief that he provided copies of it to both Burke herself and to the prosecutor, and he has asked us to allow him to withdraw as counsel in the case.

**{¶9}** Once the *Anders* brief was filed, this court sent a notice to the parties indicating that Burke could file her own appellate brief and that the State could respond to any such brief and to the *Anders* brief. The State has filed a brief, but Burke herself has not.

## Our Review of the Record Finds No Reversable Error in the Trial-Court Proceedings

**{¶10}** Under *Anders*, court-appointed appellate counsel in a criminal case is permitted to indicate — after the attorney has conscientiously reviewed the full record — that any possible grounds for an appeal in the case appear to be frivolous. *See id.* at 744. When such a brief is filed, *Anders* instructs counsel to file a brief identifying anything in the record that might arguably support the appeal. *See State v. Sergent*, 2016-Ohio-

2696, ¶ 8, fn.1.  The court of appeals should then ensure that the indigent defendant receives a copy of that brief and should give the defendant an opportunity to raise any arguments that he or she would like to present in the appeal.  *Anders* at 744.  And then finally, the court itself should fully examine the case record to determine whether the appeal is frivolous.  *Id.*  All of those steps have occurred in this appeal.

{¶11}  Burke's counsel in the *Anders* brief has suggested two potential arguments that might support her appeal.  We have now examined those issues, and we have also independently studied the record to see whether we agree with defense counsel's view that this appeal is frivolous.

**A. The Evidence Introduced at Burke's Trial was Sufficient to Support Her Conviction**

{¶12}  Burke's appellate counsel draws our attention to a potential assignment of error focusing on the sufficiency of the evidence presented at Burke's trial.  We find that the prosecution's evidence was in fact sufficient to support the conviction.

{¶13}  "When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'"  *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  "'The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"  *State v. Howell*, 2020-Ohio-174, ¶ 28 (5th Dist.), quoting *Pountney* at ¶ 19.  A "verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach

the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

**{¶14}** To prove the OVI charge, the prosecution was of course required to present evidence that Burke was "under the influence." *See* R.C. 4511.19(A)(1)(a). That term, we have explained, means (at least in an alcohol-related OVI case) "'that the accused must have consumed some intoxicating beverage, whether mild or potent, and in such quantity, whether small or great, that the effect thereof on him was to adversely affect his actions, reactions, conduct, movements or mental processes, or to impair his reactions, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess.'" *State v. Carozza*, 2015-Ohio-1783, ¶ 22 (5th Dist.), quoting *State v. Steele*, 95 Ohio App. 107, 111 (3d Dist. 1952).

**{¶15}** Though no chemical tests were performed to measure Burke's level of intoxication on the morning of the traffic stop, the prosecution at the trial provided the jury with sufficient evidence showing that Burke was under the influence of alcohol. The jury heard testimony that the vehicle that was allegedly driven by Burke weaved in and out of its lane of travel, and the jury saw dashcam footage of that driving. The jury also saw bodycam footage that captured Burke's evident confusion during the traffic stop and her slurred speech as she spoke with the police officer, and that video and audio recording also provided evidence of Burke's unsteadiness as she exited the vehicle and her disruptive behavior once she was arrested.

**{¶16}** In addition, the arresting officer testified that Burke's eyes were bloodshot and that he could smell the odor of an alcoholic beverage surrounding Burke once she

had stepped out of the vehicle.  That officer testified that, based on his experience, he believed that Burke was intoxicated that morning.  The jury also heard that Burke — when the officer asked how much she had been drinking before the stop — repeatedly said "not a lot."

**{¶17}**  The jury also heard sufficient evidence to support the prosecution's view that Burke was the operator of the vehicle.  The arresting officer testified that Burke was in the driver's seat when the officer first approached the vehicle, and Burke herself told the officer that she had been the driver of it that morning.

**{¶18}**  In short, sufficient evidence was introduced at Burke's trial to support her conviction on the OVI charge.  (Because the trial court's sentencing entry suggests that the other two charges — one of which alleged that Burke was in physical control of the vehicle while she was under the influence, and the other alleging that she committed a marked-lanes violation — were merged with the OVI charge, we will not address those additional charges now.)  We agree with Burke's appellate counsel that a sufficiency-of-the-evidence assignment of error in this case is frivolous.

### B. Burke Has Not Shown That Her Constitutional Right to a Fair Jury Was Violated

**{¶19}**  Burke's appellate counsel draws our attention to a second potential assignment of error: the racial composition of the jury.  Burke evidently is black, and her lawyer suggests that Burke's constitutional rights may have been violated because every member of the jury at her trial was white.

**{¶20}**  "In order to establish a violation of the fair representative cross-section of the community requirement for a petit jury array under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant must prove: (1) that the group

alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process." *State v. Fulton*, 57 Ohio St.3d 120 (1991), paragraph two of the syllabus.

{¶21} Burke is a member of a "distinctive" group in the community. *See State v. Crosby*, 2016-Ohio-571, ¶ 11 (5th Dist.) ("appellant is an African American and meets the first prong of the test as a "distinctive" group within the community"). Burke, however, did not — at the trial below or here on appeal — argue or "produce evidence demonstrating that African–Americans were underrepresented on the venire in relation to their percentage in the community." *State v. McNeill*, 83 Ohio St.3d 438, 444 (1998). Moreover, Burke has not presented any evidence that African Americans have been systematically excluded from the jury-selection process in Fairfield County.

{¶22} For these reasons, we agree with the assessment of Burke's appellate counsel and conclude that this potential assignment of error is frivolous.

### C. Burke's Conviction Was Not Against the Manifest Weight of the Evidence

{¶23} Though Burke's appellate counsel has not raised a manifest-weight argument, we find, from our independent review of the record, that some evidence that could have supported a not-guilty verdict was introduced at the trial on two issues: the identity of the driver and the possible causes of Burke's behavior during the traffic stop. The jury therefore had to resolve any conflicts in the evidence on those issues, and we believe that they merit an examination here.

**{¶24}** "In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the 'thirteenth juror,' and after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶25}** "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *State v. Butler*, 2024-Ohio-4651, ¶ 75 (5th Dist.). "'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" (Bracketed text in original.) *State v. Williams*, 2024-Ohio-5578, ¶ 61 (5th Dist.), quoting *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984). "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

**{¶26}** Burke chose to testify at her trial, and she told the jury that she was not the driver of the vehicle on the morning of the traffic stop. She testified that one of the male passengers had been driving, and she said that she had swapped seats with him before the officer reached the driver's-side window. She told the jury that she had lied to the officer during the traffic stop because the true driver was the father of her child, and she did not want him to face any legal consequences.

**{¶27}** The arresting officer's bodycam footage lends some credence to Burke's testimony, given that it shows that the officer, when he first approached the vehicle, repeatedly questioned the occupants about who had been driving. On that video footage, the officer can be heard saying that he believed that the backseat male passenger had swapped seats with Burke.

**{¶28}** The state presented evidence at the trial that because the traffic stop occurred in the dark and the vehicle's windows were heavily tinted, the officer could not be certain that the occupants of the vehicle had changed positions. The state urged the jury to conclude, too, that the occupants of the vehicle likely would not have had time to change positions because only a few seconds passed between the moment when the vehicle parked and the time when the officer walked up to the driver's-side window. Moreover, Burke told the officer at the scene of the traffic stop that she was the driver, so her subsequent admission of lying — the state argued — undermined the credibility of her trial testimony.

**{¶29}** The jury's conclusion that Burke was the driver does not represent a manifest miscarriage of justice. The believability of Burke's testimony was a question for the jury to resolve, and we defer to the jury's determination here because a rational basis exists in the record to support a finding that Burke was the driver.

**{¶30}** Burke also argued that her erratic behavior was the result of bipolar disorder rather than intoxication. She testified that, at the time of the traffic stop, she was not taking her psychiatric medication and that the stress of the encounter pushed her into a manic episode.

**{¶31}** The state responded at the trial by focusing the jury's attention on the evidence pointing to intoxication: (1) the police officer's testimony about the odor of an alcoholic beverage around Burke, as well as her slurred speech, bloodshot eyes, and unsteadiness while standing, (2) Burke's own roadside admission of having consumed some alcohol, and (3) the erratic driving seen by the officer before the traffic stop.

**{¶32}** This evidentiary conflict again presented a credibility determination that was the jury's to resolve, and we once more defer to the jury's resolution here because a rational basis exists in the record to support a finding that Burke's behavior was the result of intoxication rather than a mental illness.

**{¶33}** In the end, our independent review of the record leads us to the same conclusion as the one voiced in the *Anders* brief: this appeal is frivolous. In accordance with *Anders*, we grant counsel's request to withdraw as Burke's lawyer, and we affirm the trial court's judgment.

By: Gormley, J.

Hoffman, P.J. and

Popham, J. concur.