[Cite as *State v. Howell*, 2020-Ohio-174.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019CA00063 |
| HOWARD HOWELL | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                             Court of Common Pleas, Case No.
                             2018CR2015

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      January 21, 2020

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

JOHN D. FERRERO                     AARON KOVALCHIK
Stark County Prosecutor             116 Cleveland Avenue N.W.
By: KRISTINE BEARD                  808 Courtyard Centre
110 Central Plaza South, Suite 510  Canton, OH 44702
Canton, OH 44702-1413

*Gwin, P.J.*

{¶1} Defendant-appellant Howard Howell ["Howell"] appeals from his conviction and sentence after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2} In 2008, K.M.'s mother, Janice Howell, married Howell. K.M. is a child from Janice's previous marriage to R. M. K.M.'s date of birth is August 28, 1982.

{¶3} Janice testified that, during childbirth, K.M. suffered from hydrocephalitis that caused loss of oxygen to his brain. As a result, K.M. suffered brain damage, which caused him to have mental health and physical disabilities. K.M. has limited use of the left side of his body and was a special education student at school. Janice testified that although K.M. has independent living, he does not drive, and requires assistance from his parents with daily needs including, cleaning, laundry and grocery shopping.

{¶4} In August of 2018, K.M. disclosed to Janice that since 2010 he had been sexually abused by Howell. Janice immediately left the family home and notified law enforcement. Traditionally, throughout K.M.'s life, K.M. kept track of his daily activities by journalizing. In preparation for his meeting with the investigating officer, Janice suggested that K.M. write a journal describing the abuse. After three days, K.M. had written a 7- page journal about the eight years of sexual abuse. K.M. testified that he had kept personal journals since 2002 and that he kept them. K.M. admitted he did not document what happened with him and Howell in these journals and he did not journalize his sexual allegations against Howell until 2018 when his mother told him to write everything down.

{¶5}    At trial, K.M. testified about the events he described in his 7-page journal. K.M. testified that in 2010, he went on a family vacation to Lake Erie with his mom and Howell.  Howell took K.M. to the pool and then the hot tub.  While they were in the hot tub, Howell asked K.M. questions about his sexuality and sexual experiences including whether K.M. had ever had sex with a guy.  K.M. testified, "That's when it all started"- "it" meaning sex.

{¶6}    K.M. testified that the sexual abuse occurred when he was alone with Howell.  K.M. stated that during the eight years, the abuse occurred in approximately five different locations including, Howell's jeep, Howell's residences, K.M.'s apartment, the family cabin and what he called, the "gay place" in Akron, Ohio.  The sexual behavior included, Howell exposing himself, Howell masturbating and ejaculating in front of K.M., Howell stroking K.M.'s genitals, Howell performing fellatio on K.M., K.M. performing fellatio on Howell, Howell causing K.M. to engage in anal intercourse, and Howell repeatedly exposing K.M. to pornography.

{¶7}    K.M. testified that he was silent and did not write about the abuse because Howell told him that if he disclosed he (K.M.) would never see his mom again.  K.M. testified that he believed this meant two things, first he would not be able to visit his mom, or that Howell would hurt or possibly kill his mom.  (1T. at 157-158)[1].

{¶8}    K.M. testified that when the abuse occurred at Howell's home, Howell would first ask him to watch porn on the computer and talk provocatively.  K.M. testified that Howell showed him "twink porn, gay porn, child porn, women porn, and, male porn."  1T. at 181.  Then Howell would tell K.M. to take his pants down, show K.M. his penis and

---

[1] For clarity, references to the transcript from Howell's jury trial will be cited as "__T.__," signifying the volume number and the page number.

would start, "stroking" his (K.M.'s) "dick".1T.at 164-169.  Howell told K.M. do not be scared, "all guys do this."  1T. at 167.  Howell also told him not to wear underwear, would come into his room at night, and K.M. would wake to Howell fondling his penis. 1T.at 194.

{¶9}    When Howell took K.M. to the cabin and the "gay place," Howell would touch K.M.'s penis with his hands and his mouth, putting his tongue on K.M.'s penis causing him to ejaculate.  1T.at 170-172.  Howell made K.M. put his mouth on his (Howell's) penis saying at first, "try it [K.M.] you'll like it."  KM. testified, "I did not like it."  1T. at 171-172; 182-183.  K.M. testified that Howell told him to ejaculate on a paper towel and Howell did the same.  1T.at 172.  At the "gay place" Howell encouraged K.M. to watch other adult men engaging in sexual acts. On two occasions, at the gay place and the cabin, Howell, asked K.M. to lay on his stomach.  Howell then rubbed his penis on, and partially inserted, his penis, into K.M.'s butt.  K.M. testified that Howell used a lubricant on his own penis. 1T. at 173-176.  K.M. testified that Howell would make excuses to come to his apartment and frequently asked him to engage in oral sex. 1T. at178-179.

{¶10}  K.M. also testified that he had a girlfriend with three children.  He stated that during the relationship the four of them would stay overnight at his home.  As a result, he had children's clothing in his home.  K.M. identified a pair of children's denim shorts and testified that when Howell came over they would both masturbate and ejaculate into the shorts.  K.M. gave the shorts to the investigating officer. K.M. further testified that he had broken up with is girlfriend in 2014, but he kept the jeans/shorts for kids for over four years.

{¶11}  K.M. described Howell physical appearance.  He said Howell's penis was uncircumcised and that Howell had shaved his groin area.  K.M. said that Howell also

shaved K.M.'s genitals.  1T.187-189. He also said Howell had scares on both sides of his hips.

{¶12}  The last incident occurred at Shady Rest.  Howell and K.M. were alone in a shed.  K.M. was about to leave the shed when Howell said "come back here."  K.M. testified that Howell proceeded to stroke his penis.  K.M. said that's when he told his mom, he was concerned that Howell was willing to abuse him in a public place.  He testified that he told his mom everything.

{¶13}  On August 27, 2018, Janice and K.M. made an initial abuse report at the Sheriff's Department and turned over Howell's lap top computer and generic Viagra.  Deputies also collected sheets and bedding from the cabin and took photos of a tube of KY Jelly on the nightstand.

{¶14}  Deputy John Vonspiegel was assigned to investigate the case.  On August 31, 2018, Vonspiegel interviewed KM. K.M. gave Vonspiegel his 7-page journal and a pair of children's denim shorts which were placed in evidence.  Deputy Vonspiegel learned that there was a place in Akron called "The Steam and Sauna Club," which is a gay men's club.  Deputy Vonspiegel found K.M.'s journal and verbal statements to be consistent and found K.M. to be open and cooperative in the investigation.

{¶15}  On August 30, 2018, Deputy Vonspiegel arranged a one-person consent call between Janice and Howell.  During the call, Janice asked Howell why he had raped her son to which Howell replied that K.M. had initiated everything.

{¶16}  On September 6, 2018, Deputy Vonspiegel interviewed Howell.  Howell admitted that he spent time alone with K.M. at home and at the cabin and that they would hang out a lot together.  Howell told Vonspiegel that he caught K.M. watching child porn

and set KM. straight.  Howell admitted he was not circumcised and thought KM. might have seen his penis at the gym in the shower.

{¶17}  Deputy Vonspiegel sent Howell's computer to the FBI for analysis.  The FBI did not find child porn on the computer but did find adult pornography.  Deputy Vonspiegel collected mouth swabs from both K.M. and Howell and forwarded all the evidence to the Bureau of Criminal Investigation for further forensic analysis.

{¶18}  Upon cross examination Deputy Vonspiegel testified that Howell never admitted to having sexual contact with K.M. Deputy Vonspiegel further testified that he did not know what Howell meant when he said, "["K.M."]'s fault, he initiated it."  Deputy Vonspiegel recalled that Howell told him he caught K.M. masturbating.  Deputy Vonspiegel also testified that K.M. told him that Howell had brought the jeans/shorts to him and left out his other story that the jeans/shorts belonged to his girlfriend's child and that K.M. had kept them for four years.  1T. at 333-334.

{¶19}  Andrew Sawin, a forensic scientist at BCI analyzed the DNA evidence.  He testified that initial tests established that the denim shorts were positive for semen.  Several stains were swabbed for further DNA analysis.  The analysis for several stains showed two fractions, non-sperm fractions (such as saliva) and sperm fractions (semen).  Sawin testified that finding two these two fractions involves a technique called the differential extraction.  This technique is designed to separate any sperm that might be present on a specific sample from any other source of DNA that might be present on the sample.  For the first sample (1.1), stain #1 on the shorts, a mixture of DNA profiles was recovered.  Howell's DNA profile was the major contributor in the non-sperm fraction. The possibility of finding the same profile twice is rarer than one in one trillion of a random

group of unrelated people. In the second sample (1.12), stain #12, a mixture of DNA profile was recovered. K.M. was included. Howell was also included. The possibility for Howell's same profile occurring twice is rarer that one in one trillion. In the third sample (1.17), stain #17, a mixture of DNA profile was recovered. Howell was included as a major component of the sperm fraction. The chance of duplicating the Howell's DNA in the sperm fraction is rarer than one in one trillion. Sawin testified that the DNA that shows up in the sperm fraction would not be from saliva.

{¶20} Upon cross-examination, Sawin testified that the non-sperm samples concerning Howell could potentially be saliva or mucus. Sawin also testified that K.M. was expected to be a contributor on the jeans/shorts that were tested because he believed K.M. had worn the jeans/shorts and was not aware that K.M. could not have worn the jeans/shorts because they were children's' clothing.

{¶21} Sawin also testified that the BCI evidence submission form listed a white and blue comforter and a green bed sheet as having been brought into the lab. However, the items were not accepted at the time of the evidence submission and were not forensically tested for the presence of DNA. The only item submitted for DNA testing was the pair of denim shorts.

{¶22} At trial, Howell took the stand on his own behalf. Howell testified that Janice suffers from a bipolar disorder and that their marriage was fine until she went off her medications. Howell testified that he could not have abused K.M. in their home in Beach City because in 2010 they lived in Navarre. He testified that he had concerns that K.M. liked younger children and caught K.M. watching child porn on K.M.'s phone. Howell said he was never alone with K.M. at the cabin and that the KY jelly was used with Janice. He

testified, over an objection by the state, that he believed Janice had orchestrated the whole disclosure because she had threatened to make him pay when she found out she didn't get half the home in the divorce. He believed K.M. went along with the plan because he craved attention and acceptance from his mother and would do anything for her. He admitted that he purchased and possessed erectile dysfunction pills.

{¶23} On cross-examination, Howell, admitted that he had been alone with K.M. at the cabin. He admitted that he never told Janice that he saw K.M. watching child porn, or that he had concerns about K.M. with children. In fact, when he was asked on the one-person consent call why he had raped K.M. he said that K.M. had initiated those things. Howell explained that his statement was in reference to how K.M. was always showing Howell pornography on his cell phone. Howell explained that the DNA of his found on the children's jeans/shorts was because he had thrown them away in a garbage bag that contained his "snot rags" and that K.M. got the jean/shorts out of that bag. 2T. at 390-93.

{¶24} Howell was indicted on one count of Rape, RC 2907.02(A) (1) and/or (A)(2) and Sexual Battery, RC 2907.03(02) and or (A)(5). After the presentation of evidence, Howell was acquitted on the Rape charge and convicted for Sexual Battery. Howell was sentenced to a 60-month prison sentence and found to be a Tier III sexual offender.

*Assignment of Error*

{¶25} Howell has raised one Assignment of Error,

{¶26} "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

*Law and Analysis*

**STANDARD OF APPELLATE REVIEW.**

*Sufficiency of the Evidence.*

{¶27} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶28} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus: *Walker,* at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney,* 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001),

*quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

## ISSUE FOR APPEAL

*A.    Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Howell's guilt on each element of the crime of Sexual Battery beyond a reasonable doubt.*

**{¶29}**  Howell was convicted of Sexual Battery.  R.C. 2907.03 provides, in relevant part,

> (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

> \* \* \*

> (2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

> \* \* \*

> (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

**{¶30}**  R.C. 2907.01 provides in relevant part,

(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶31} In his appeal, Howell's argument focuses exclusively upon his contention that "the State of Ohio did not prove beyond a reasonable doubt that sexual conduct occurred between him and [K.M.]." [Appellant's Brief at 7-8]. He bases this contention of his premise that "[K.M.] was not a credible witness." [Appellant's Brief at 9]. He further contends that because the crime laboratory tested the jeans/shorts under the assumption that K.M. had worn them, which was not true, "this testimony shows that the DNA testing was done in a biased reckless manner." [Appellant's Brief at 10-11].

{¶32} K.M. appeared as the State's first witness and testified that for approximately 8 years in 6 different locations Howell caused him to engage in fellatio on multiple occasions. K.M. described Howell physical appearance. He said Howell's penis was uncircumcised and that Howell had shaved his groin area. K.M. said that Howell also shaved K.M.'s genitals. 1T.187-189. He also said Howell had scares on both sides of his hips. 1T. at 188.

{¶33} On August 30, 2018, Deputy Vonspiegel arranged a one-person consent call between K.M.'s mother and Howell. During the call, the mother asked Howell why he had raped her son to which Howell replied that K.M. had initiated everything. 1T. at 303.

{¶34} Andrew Sawin, a forensic scientist at BCI analyzed the DNA evidence. He testified that initial tests established that the denim shorts were positive for semen. For the first sample (1.1), stain #1 on the shorts, a mixture of DNA profiles was recovered. Howell's DNA profile was the major contributor in the non-sperm fraction. In the second sample (1.12), stain #12, a mixture of DNA profile was recovered. K.M. was included. Howell was also included. The possibility for Howell's same profile occurring twice is rarer that one in one trillion. T.1.248. In the third sample (1.17), stain #17, a mixture of DNA profile was recovered. Howell was included as a major component of the sperm fraction.

{¶35} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that sexual conduct between Howell and K.M. had occurred. We hold, therefore, that the state met its burden of production regarding each element of the crime of Sexual Battery and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Howell's conviction.

{¶36} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197

N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the JenksN.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n. 4, 684 N.E.2d 668 (1997).

{¶37} In the case at bar, the jury heard the witnesses, viewed the evidence, and heard both K.M. and Howell subject to cross-examination. The jury found Howell not guilty of Rape. Thus, a rational basis exists in the record for the jury's decision.

{¶38} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Howell's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Howell's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Howell of Sexual Battery.

{¶39} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which Howell was convicted.

{¶40} The sole assignment of error is overruled.

{¶41}   The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, J.,

Hoffman, P.J., and

Wise, John, concur