[Cite as *State v. Dowdell*, 2020-Ohio-1455.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| DESHAWN A. DOWDELL, | : | Case No. 2019 CA 0058 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County
Court of Common Pleas, Case No.
2018-CR-0782

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     April 13, 2020

APPEARANCES:

For Plaintiff-Appellee                     For Defendant-Appellant

GARY BISHOP                           RANDALL E. FRY
Prosecuting Attorney                    10 West Newlon Place
Richland County, Ohio                   Mansfield, Ohio 44902

By: JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Baldwin, J.*

{¶1} Deshawn Dowdell appeals his conviction and sentencing by the Richland County Court of Common Pleas for a list of charges: murder, R.C. 2903.02(A) an unclassified felony, with two firearm specifications; two counts of discharge of a firearm on or near prohibited premises, R.C. 2923.162 (A)(3)&(C)(4) and R.C. 2923.162 (A)(3)&(C)(2) felonies of the first degree and third degree respectively; and Improperly Handling Firearms in a Motor Vehicle, R.C. 2923.16 (A), a felony of the fourth degree.

## STATEMENT OF FACTS AND THE CASE

{¶2} Dowdell was charged with the shooting death of Terrance Harris and his first trial resulted in a hung jury. He was retried, convicted on all counts and given an aggregate sentence of fifty-three years to life. He has appealed and argues that the testimony of several witnesses is not credible and should not be considered, and that therefor there is not sufficient evidence to support a conviction.

{¶3} Demauri Rawls spent Saturday, April 7, 2018 with an intimate friend, Tiffany Owens. When he woke up on Sunday, April 8, 2018, he left the home in Owen's black Jeep Cherokee. Tr. 246. Rawls went home, showered and changed clothes. Terrance Harris called and asked Rawls to pick him up, a common occurrence between the two friends. Tr. 167. Rawls picked up Harris around noon with the plan to drive around Mansfield and "smoke weed" to "pass time." Tr. 167. With no destination in mind, Rawls drove and Harris was in the front passenger seat. Tr. 166. They were driving on South Adams Street when they saw DeShawn Dowdell come out of a home and raise both

hands over his head. Tr. 168.  They recognized Dowdell but did not know him well, and did not attach any significance to the gesture.

{¶4}   Rawls and Harris returned to Owens's home in Ontario to take her to a local store, though it is unclear when in the course of events this occurred.  While Owens was in the store, Rawls and Harris waited outside. Once she was finished, Rawls drove her home and he and Harris continued their drive around Mansfield.

{¶5}   Several hours passed and Rawls and Harris had a second meeting with Dowdell.  Rawls and Harris had stopped at a park to buy and smoke marijuana.  Harris got out, made the buy and got back into the car when Rawls saw a red Cadillac enter the parking lot.  Rawls decided to leave because he did not want to be caught smoking and, as he left he noticed the driver of the Cadillac was Dowdell. Tr.171.  Rawls left the parking lot on to Fourth Street and then drove into a retail parking lot because he did not want Dowdell behind him.  Dowdell followed Rawls into the parking lot, parked and raised both arms as he did at the first encounter as Rawls drove out of a different exit from the parking lot. Rawls saw no one else in Dowdell's car.  Tr. 175.   Rawls was now concerned that Dowdell's hand gesture may have some less innocent meaning, but he and Harris continued their drive in Mansfield.

{¶6}   Rawls and Harris were on their way to Owens's home when Rawls noticed the red Cadillac at the traffic light at the intersection of Fourth and Trimble. Tr. 180.  As they entered the intersection, Rawls "locked eyes" with the driver of the red Cadillac and saw that Dowdell was the driver.  After passing through the intersection, Rawls looked in the rear view mirror and saw the red Cadillac make a U-turn.

{¶7}    After the red Cadillac made a U-turn, Rawls noticed it increasing its speed, so he did as well, swerving left and right out of fear of being shot. Tr. 186.  Harris was in the front passenger seat looking over his left shoulder when Rawls heard a gunshot, the sound of a bullet puncturing the car and Harris saying "I got hit." Tr. 187-188. Rawls drove directly to the hospital and arrived at approximately 8:30 P.M. With the help of the hospital staff, he got Harris out of the vehicle, immediately left the hospital and returned the car to Owens's home.  He did not call the police or stay to make a voluntary statement because he feared that his friends would ostracize him and he would become known as a snitch.

{¶8}    Rawls left the Jeep at Owens home and returned to the hospital and found that Harris had died.  He attempted to leave, but was stopped by police and asked to give a statement.  At that time he was not interested in being cooperative and planned to pursue vengeance on his own.  His statement was intentionally vague and uninformative.

{¶9}    Earlier on April 8th, Dowdell called Noel Mott, his friend and protector since April 2017. Mott was in Detroit, Michigan for the weekend.  Dowdell complained that he was being watched and followed. Tr. 87.  During a subsequent call, Dowdell complained that people followed him into a parking lot and there was an altercation.  At the next call, Dowdell told Mott they followed him and that he was "gonna bust a u behind them" at the intersection.  Mott heard gunshots and the call disconnected.  Dowdell called back and said I think I just shot one of them.  Mott remembers the calls featuring the gunshot and Dowdell's admission to the shooting being made in the evening, about "8:00-ish, 9:00-ish." Tr. 99

{¶10}  Mott met Dowdell in Akron days later and Dowdell repeated the story and added that one person in the car following him was "Turtle," an alias for Terrance Harris,

and that the shooting occurred on Fourth and Buckeye. Mott also remembered that before he left town for Detroit, Dowdell was driving a Cadillac.

{¶11} On the day after the shooting, Dowdell called Nate Feagin. Dowdell asked Feagin to go to his apartment and get his television, a video game console and gun and bring them to Akron in exchange for payment of two hundred dollars. Dowdell told him to call for directions once he had the items and was close to Akron. Feagin was familiar with Dowdell's apartment and was able to find the items with no problem. He helped himself to a bottle containing promethazine, put it in a bag with the gun and two magazines, put all of the items in his car and left for Akron. He was stopped by the Ohio State Highway Patrol before he completed the delivery to Akron.

{¶12} Sergeant Shane Morrow of the Ohio State Highway Patrol was on duty on April 9, 2018 at approximately 10:00 AM when he noticed a dark blue vehicle with excessive window tint. Sgt. Morrow stopped the vehicle driven by Nate Feagin for the window tint violation and, when he approached the car, he smelled raw marijuana. He asked Feagin about the odor and Feagin admitted to having marijuana in the console of the vehicle. Sgt. Morrow completed a search of the vehicle and found the marijuana and a bag in the trunk containing promethazine in a bottle and a handgun with two magazines.

{¶13} Feagin initially denied knowledge or ownership of the gun, but admitted the promethazine was his apparently forgetting that the items were in the same bag. He claimed that he just purchased the automobile at auction and the gun must have already been in the vehicle. The story was not consistent with the admission of ownership of the promethazine and did not convince the trooper so he continued his questioning. Feagin changed his story and explained the gun belonged to a person named Paris or P-money.

Paris had come to Mansfield in an Uber and left in a taxi and could not take the video game, television and gun with him in the taxi. Sgt. Morrow asked for a phone number for Paris and Feagin claimed it was on his cell phone. During the conversation with Feagin, Feagin's cell phone was constantly ringing and Feagin claimed it was Paris, the owner of the gun. Sgt. Morrow answered the phone and asked if the caller was P-Money and the caller said yes, but was not responsive to any further questioning.

{¶14} Sgt. Morrow decided to release Feagin, but confiscated the weapon and the magazines. It was not until later that Sgt. Morrow discovered that gun had been stolen, but the last owner had not yet reported the theft. After Feagin was charged with receiving stolen property and other charges, he admitted that the person on the phone was Dowdell and that he had concocted the story about Paris and P-money. He admitted he was transporting the property, including the guns and magazines, to Dowdell at an undisclosed location in Akron at Dowdell's request.

{¶15} Demauri Rawls was scheduled to appear in court shortly after the April 8th shooting to address the completion of his diversion program arising out of a prior offense. He missed the hearing and was called into the probation office to discuss his absence when he was confronted by Detective Rich Miller, lead detective in the Harris shooting. Detective Miller questioned Rawls about the shooting and his subsequent statement but Rawls concedes he did not cooperate as he "intended on handling it myself." Tr. 201. Detective Miller had a warrant for Rawls arrest for a prior juvenile offense. Rawls was taken from the probation office and placed in detention.

{¶16} After hearing repeatedly from Harris's mother that nothing had happened to Dowdell and spending months in jail, in August 2018 Rawls started sending kites, or

messages, to his probation officer asking for the opportunity to tell the complete story regarding what happened to Harris.  Rawls then described his drive with Harris around Mansfield, the three meetings with Dowdell and the car chase and shooting.  He was released on probation with strict parameters regarding his movement with a GPS ankle monitor to track his location.

{¶17} While the Mansfield Police Department was attempting to identify the shooter, other investigative agencies continued work on the evidence that had been found. Bryan Casto, Montgomery County Pathologist, confirmed that Harris died from the gunshot wound that he suffered on April 8, 2018.  Cindy Reed, Crime Scene Investigator, established that the bullet removed from Harris traveled through the rear of Owens's Jeep Cherokee, through the back passenger seat, the front passenger seat and into Terrance Harris where it stopped.

{¶18}  Sergeant Stephen Brane, Mansfield Police Department, found several shell casings at the scene of the shooting and those casings, as well as the bullet removed from Harris were examined by Michael Roberts, weapons analyst from the Ohio Bureau of Investigation.  He concluded that the casings found at the scene and the bullet that caused Harris's death were all fired from the Glock semi-automatic that was recovered from Feagin.

{¶19}  Dawn Fryback, DNA Analyst at the Mansfield Police Department, tested the exhibits for traces of DNA and compared them to known profiles.  She found that most of the evidence contained DNA from several individuals, but that Dowdell could not be ruled out as the contributor of the DNA found on the murder weapon. Jennifer Hornyak, DNA analyst at Cybergenetics, received the raw data produced by Fryback and concluded that

the DNA profile on the Glock grip made it 141 million times more probable that it was Dowdell's DNA than a coincidental match to another person.

{¶20} The evidence, less the testimony of Noel Mott, was presented to a jury and on March 4, 2019 a mistrial was declared when the jury was unable to render a decision. A second trial, ending May 21, 2019, at which Mott testified, resulted in a conviction on all counts for which Dowdell was sentenced to fifteen years to life for murder with eight years for the firearm specifications. The charge of Discharge of Firearm on or Near Prohibited Premises R.C. 2923.162(A) (3) & (C) (4) and the charge of Improperly Handling Firearm in a Motor Vehicle were merged with the charge of murder. Dowdell was sentenced to thirty-six months in prison for Discharge of Firearm on or Near Prohibited Premises R.C. 2923.162(A)(3) & (C)(2) to be served consecutively to the sentence for the murder charge and consecutive to a sentence imposed in a different case, for an aggregate sentence of fifty-three years to life.

{¶21} Appellant filed a notice of appeal and submitted one assignment of error:

{¶22} "I. THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION OF ALL OF THE CHARGES IN THE INDICTMENT AND AS A RESULT THE APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I, SECTION SIXTEEN OF THE OHIO CONSTITUTION AND 5th AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED."

### STANDARD OF REVIEW

{¶23} Dowdell is claiming that there was insufficient evidence to support the conviction. The standard of review for a challenge to the sufficiency of the evidence is set forth in

*State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the

syllabus, in which the Ohio Supreme Court held as follows:

> An appellate court's function when reviewing the sufficiency of the evidence
>
> to support a criminal conviction is to examine the evidence admitted at trial
>
> to determine whether such evidence, if believed, would convince the
>
> average mind of the defendant's guilt beyond a reasonable doubt. The
>
> relevant inquiry is whether, after viewing the evidence in a light most
>
> favorable to the prosecution, any rational trier of fact could have found the
>
> essential elements of the crime proven beyond a reasonable doubt.

**ANALYSIS**

**{¶24}** Appellant's sole assignment of error complains that "the evidence offered

to prove the guilt of the Appellant on all charges in the Indictment, that if viewed in the

light most favorable to the State that this evidence was not sufficient to prove the

Appellant guilty on all charges in the indictment." Appellant's Brief, p. 18.   Appellant

reaches this conclusion after suggesting several witnesses were not credible and that the

DNA results were subject to different interpretations.

**{¶25}** Noel Mott, Nate Feagin and Demauri Rawls were key witnesses who

testified to material facts in this case and Dowdell's trial counsel provided the jury with

information regarding each of these witnesses that could have persuaded jurors that they

were not to be believed and may have an incentive to fabricate a story. Noel Mott came

forward only after he was indicted, allegedly violated his bond and was given a proffer

agreement that allowed him to offer testimony without fear that his testimony would be

used against him. Nate Feagin offered a statement only after he was charged for offenses

relating to the transport of Dowdell's gun and Rawls was in detention for an extended period when he offered to make a statement in exchange for being released on probation. The DNA evidence, according to Dowdell, was inconclusive and due to the number of profiles found in the tests, the results supported alternative theories regarding the identity of the shooter.  Dowdell's argument is summarized in his conclusion:

> The Appellant contends that the testimony of Mr. Rawls, Mr. Feagin and Mr. Mott should not have been believed by the jury because Mr. Rawls and Mr. Feagin through their testimony have been show(sic) to be liars and Mr. Rawls and Mr. Feagin only implicated the Appellant as the shooter after they were in legal trouble. Mr. Mott chose not to come forth and relate his story implicating the Appellant in the murder until he was federally indicted and signed a Proffer Agreement.
>
> As far as the issue of the gun, it is true that the Appellant could not be excluded as having touched the short magazine and the Glock grip but there were also three unknown individuals DNA were on the short magazine and four other unknown people who's(sic) DNA was also on the Glock grip.

Appellant's Brief, p. 17-18.

{¶26} Dowdell's argument focuses exclusively on the credibility of the witnesses and the evidence, but the jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999

WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, citing *State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, citing *State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence and direct evidence inherently possess the same probative value. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, 494 (1991), paragraph one of the syllabus, superseded by State constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102 at n. 4, 684 N.E.2d 668 (1997). *State v. Howell*, 5th Dist. Stark No. 2019CA00063, 2020-Ohio-174, ¶ 36.

**{¶27}** Succinctly stated, "[o]n the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, 213 (1967). We will not second-guess the jury's credibility determinations. We have reviewed the record, and after viewing the evidence in the light most favorable to the prosecution, we hold that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. There was sufficient evidence, if believed by the jury, to establish beyond a reasonable doubt that Dowdell purposely caused the death of Terrance Harris, that he discharged a firearm upon or over a public road or highway, creating a substantial risk of physical harm to any person or causing serious physical harm to property and actually causing physical harm to Dowdell, and that he knowingly discharged a firearm

while in motor vehicle. R.C. 2923.16(A).  We do not find that reasonable minds could not reach the conclusion reached by the trier-of-fact.  We hold that Dowdell's sole assignment of error is not well taken and overrule it.

**{¶28}**  The decision of the Richland County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, Earle, J. concur.