[Cite as *State v. Fernandez*, 2025-Ohio-5382.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 CA 00009 |
| Plaintiff - Appellee | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas of Stark County, |
| JEOVANY ANTHONY FERNANDEZ, | Case No. 2024 CR 1319 |
| Defendant - Appellant | Judgment:   Affirmed |
| | Date of Judgment: December 1, 2025 |

BEFORE: Craig R. Baldwin; Andrew J. King; David M. Gormley, Judges

APPEARANCES: Kyle L. Stone and Vicki L. DeSantis, Stark County Prosecuting Attorney's Office, Canton, Ohio, for Plaintiff-Appellee; D. Coleman Bond, Canton, Ohio, for Defendant-Appellant.

*Gormley, J.*

{¶1}   Defendant Jeovany Fernandez raises sufficiency-of-the-evidence and manifest-weight challenges to his convictions on four criminal charges.  For the reasons explained below, we affirm Fernandez's convictions.

**The Key Facts**

{¶2}   Fernandez and his alleged victim, O.L., lived in separate homes in 2024, and they are the parents of one minor child.

{¶3}   On the evening of May 11, 2024, O.L. went out for drinks with a female friend.  O.L. testified at the trial in this case that she was not intoxicated when she and that friend returned to O.L.'s apartment at around 3:30 a.m. on May 12.  When her friend

said goodnight and departed, O.L. was in her bedroom, and she did not go to the door to ensure that it was locked.

{¶4} According to her trial testimony, O.L. woke up a few hours later and found herself lying on her living-room floor unable to recall why or when she had left her bedroom. She noticed that she had a bloodshot eye and bruises on her face, and her cell phone was missing. As she looked around her apartment, she also saw that her son's dresser had been emptied, his blankets were missing, and other items were out of place.

{¶5} O.L. suspected that Fernandez had entered her apartment and assaulted her. She called Fernandez that morning and told him that she believed he had assaulted her and taken her phone, and she said that she would call the police if he did not return it. As she was leaving for her job soon thereafter, O.L. discovered that her missing phone had now been placed in her mailbox. On that phone, O.L. found a video recording made by Fernandez that he had evidently recorded while he was outside her apartment at around 6:03 a.m. that morning. The missing blankets could be seen in the video, and O.L. testified that the sobbing that can be heard on the video — a sound that was captured by the recording when Fernandez stood just outside the closed front door of O.L.'s apartment — was the sound of her crying inside her bathroom and living room when she realized what had happened to her.

{¶6} O.L. sought medical attention two days later, and a nurse photographed her injuries and encouraged O.L. to follow up with the police. The medical records from O.L.'s hospital visit were introduced at trial and indicated that O.L. had sustained a closed-head injury with loss of consciousness, a scleral hemorrhage in her left eye, and vision

changes.  O.L. did not immediately report the May 12 incident to law enforcement.  At the trial, O.L. testified that Fernandez, in a phone call some days later, apologized for hurting her, and some text messages from him acknowledging that he had hurt O.L. on May 12 were introduced as exhibits.

**{¶7}**    O.L. testified, too, that Fernandez, two weeks after the first incident, again entered her apartment without her permission.  During that second incident on May 26, 2024, Fernandez was hiding behind her bedroom door, O.L. said, and he jumped out at her when she went upstairs to take a shower.  When they heard O.L. scream, her neighbors called 9-1-1.  Fernandez — according to O.L.'s trial testimony — raised his hand and threatened to hit her if she did not stop screaming.  Fernandez then fled from the apartment shortly before the police arrived.  O.L. told the police that day that she did not know where Fernandez was living, but she admitted at his trial that that statement was untrue.

**{¶8}**    Fernandez was convicted at a bench trial on two counts of aggravated burglary and two counts of domestic violence.  He now appeals.

## The State Presented Sufficient Evidence on Both Aggravated-Burglary Charges

**{¶9}**    In his first assignment of error, Fernandez argues that the state failed to present sufficient evidence to support his convictions on the two aggravated-burglary charges.

**{¶10}**  "When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'"  *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d

259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Howell*, 2020-Ohio-174, ¶ 28 (5th Dist.), quoting *Jenks* at paragraph two of the syllabus. A "verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶11} To prove the two R.C. 2911.11(A)(1) aggravated-burglary charges — one for each of the two distinct May 2024 incidents at O.L.'s apartment — the state was required to introduce evidence that Fernandez, by force, stealth, or deception, had trespassed in an occupied structure when another person was present, that Fernandez had a purpose to commit inside the apartment any criminal offense, and that he inflicted or attempted or threatened to inflict physical harm to O.L. during the trespass.

### The May 12 Incident

{¶12} For the May 12 incident, Fernandez argues that the state presented no evidence that he trespassed in the apartment. In support of that view, he points to O.L.'s trial testimony indicating that she had no memory of his having been in her apartment that morning, and he notes that the video recording that O.L. discovered on her recovered cell phone shows him outside rather than inside the apartment.

{¶13} Trespass "is defined as knowingly and without privilege entering or remaining on the premises of another." *State v. Ramunas*, 2021-Ohio-3191, ¶ 15 (5th Dist.), citing R.C. 2911.21(A)(1). Circumstantial evidence is evidence that can be "'inferred from reasonably and justifiab[ly] connected facts.'" *State v. Thompkins*, 2023-

Ohio-2871, ¶ 33 (5th Dist.), quoting *State v. Fairbanks*, 32 Ohio St.2d 34 (1972), paragraph five of the syllabus. Circumstantial evidence is given the same weight and deference as direct evidence. *Id.*, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991).

**{¶14}** The state presented sufficient evidence that Fernandez trespassed inside O.L.'s apartment on May 12. O.L. testified that Fernandez, both during a later phone conversation and in text messages, apologized to her for hurting her. Also, the missing blankets from their son's room — a room inside O.L.'s apartment — were visible in the video that Fernandez created outside the apartment at around 6:03 a.m. that morning. The cell phone on which that video was recorded belonged to O.L., and she testified that she had had that phone with her in the apartment after she and her friend returned there in the early-morning hours of May 12. Fernandez or someone else would have had to enter the apartment to take possession of the phone before creating the video. Moreover, that cell phone promptly turned up in O.L.'s mailbox soon after she told Fernandez that she would call the police if he did not return it.

**{¶15}** When we view this evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found that Fernandez trespassed inside O.L.'s apartment on May 12, 2024.

*The May 26 Incident*

**{¶16}** For the May 26 incident, Fernandez argues that the evidence presented at his trial was insufficient to prove that he had a purpose to commit a criminal offense, and he notes that no testimony suggested that he struck O.L. that day.

**{¶17}** After jumping out from behind O.L.'s bedroom door, Fernandez — according to O.L.'s trial testimony — raised his hand up as if to strike her while threatening

to hit her if she did not stop screaming. That threat — which appears to meet the elements of a menacing offense under R.C. 2903.22(A)(1) or a disorderly-conduct offense under R.C. 2917.11(A)(1) — was sufficient to meet the "any criminal offense" requirement in R.C. 2911.11(A) for an aggravated-burglary conviction. And the (A)(1) paragraph of that latter provision — which allows the prosecution to secure a conviction if the evidence shows that the defendant "threaten[ed] to inflict physical harm" — certainly did not require the government to prove that Fernandez struck O.L. that day.

{¶18} The state was also not required to prove that Fernandez entered the apartment intending to commit a criminal offense there. Evidence that he threatened to inflict physical harm while he was trespassing was enough. *See State v. Fontes*, 87 Ohio St.3d 527, 530 (2000) ("a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass").

{¶19} In short, the state presented sufficient evidence to support the elements that Fernandez claims were not addressed in connection with both the May 12 and the May 26 aggravated-burglary offenses. His first assignment of error is overruled.

**Fernandez's Convictions Were Not Against the Manifest Weight of the Evidence**

{¶20} In his second assignment of error, Fernandez argues that his convictions were against the manifest weight of the evidence.

{¶21} In determining whether a conviction was against the manifest weight of the evidence, an appellate court acts as a thirteenth juror, and "after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must

be [reversed] and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The reversal of a conviction on manifest-weight grounds should occur only in "the 'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶22} "Weight of the evidence concerns the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof  will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them." *Thompkins* at 387 (emphasis in original) (quotations and citation omitted).  "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision."  *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

{¶23}  We note first that Fernandez in his appellate brief tells us, on the manifest-weight issue, that he "incorporates the arguments contained in Assignment of Error No. 1 by reference."  That is not a permissible way to present an argument in this court.  See App.R. 16(A)(7) (indicating that an appellate brief must contain separate arguments for "each assignment of error" as well as "citations to the authorities, statutes, and parts of the record" that support each argument); App.R. 12(A)(2) ("The court may disregard an assignment of error . . . if the party raising it . . . fails to argue the assignment separately in the brief, as required under App.R. 16(A)"); *State v. Washington*, 2023-Ohio-1667, ¶ 116-118 (8th Dist.) (criticizing an appellant for "incorporat[ing] by reference" earlier sufficiency-of-the-evidence arguments into a manifest-weight argument); *State v.*

*Bradshaw*, 2023-Ohio-1244, ¶ 68 (3d Dist.) (noting that an appellate court need not construct and then resolve a manifest-weight argument on behalf of the defendant where the defendant's manifest-weight challenge "simply duplicates claims he made when challenging the sufficiency of the evidence supporting the same claims").

**{¶24}** As for the merits of Fernandez's manifest-weight argument, he identifies no evidentiary conflict that might have led the trial judge to lose her way during the bench trial. He instead argues that his convictions were against the manifest weight of the evidence because O.L.'s testimony was, in his view, not credible, and he points to the fact that O.L. had no memory of him being in her apartment on May 12 and the fact that she did not immediately seek the help of law-enforcement officers that day.

**{¶25}** Though O.L. testified that she could not remember how she ended up on her living-room floor on the morning of May 12, her medical records from May 14 indicate that she had suffered a closed-head injury with loss of consciousness. And the video recording that Fernandez made using O.L.'s phone placed him outside her apartment on the very morning when she claims he assaulted her in the apartment. O.L. also testified that Fernandez apologized to her for injuring her on May 12, and text messages supporting O.L.'s testimony on that issue were introduced at the trial. O.L. explained, as well, that she was fearful of Fernandez and was concerned about how he might react if she provided information about him to the police.

**{¶26}** After reviewing the full record of the trial, we cannot say that the trial judge lost her way in finding Fernandez guilty. "While the [trier of fact] may take note of inconsistencies and resolve or discount them accordingly, such inconsistencies alone do not render a conviction against the manifest weight or sufficiency of the evidence." *State*

*v. Wolters*, 2022-Ohio-538, ¶ 20 (5th Dist.).  Though O.L.'s testimony about the date when she first reported Fernandez's conduct to law enforcement contains some inconsistencies, the trial judge was free to weigh her credibility and consider her testimony as a whole.

**{¶27}** Having ourselves now evaluated the evidence and considered O.L.'s credibility and any inconsistencies in her testimony, we find in the record rational bases for the judge's determinations that Fernandez assaulted O.L. in her apartment on May 12 and that he again entered her apartment and threatened to assault her on May 26. Fernandez's second assignment of error is overruled.

**{¶28}** For the reasons explained above, the judgment of the Court of Common Pleas of Stark County is affirmed.  Costs are to be paid by Defendant Jeovany Fernandez.

By: Gormley, J.;

Baldwin, J. and

King, P.J. concur.