[Cite as *State v. Sherman*, 2025-Ohio-5792.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO,<br><br>    Plaintiff - Appellee<br><br>-vs-<br><br>MISTY M. SHERMAN,<br><br>    Defendant - Appellant | Case No. 25CA00036<br><br><u>Opinion & Judgment Entry</u><br><br>Appeal from the Licking County Municipal Court, Case No. 25 CRB 00116<br><br>Judgment:   Affirmed<br><br>Date of Judgment:  December 29, 2025 |

BEFORE: William B. Hoffman; Kevin W. Popham; David M. Gormley, Judges

APPEARANCES: Tricia M. Moore, Law Director for the City of Newark, Ohio, for Plaintiff-Appellee; Todd W. Barstow, Newark, Ohio, for Defendant-Appellant.

*Gormley, J.*

**{¶1}**   Defendant Misty Sherman appeals her conviction at a jury trial on one misdemeanor charge of violating a protection order.  Sherman argues that her conviction was not supported by sufficient evidence, that her conviction was against the manifest weight of the evidence, and that the trial court erred by incorrectly instructing the jury on the term "recklessly."  For the reasons explained below, we affirm the trial court's judgment.

**The Key Facts**

**{¶2}**   Misty Sherman was ordered in 2023 to refrain from any contact with her cousin, Aimee Watson. The court that issued that civil protection order directed Sherman to remain at least 500 feet from Watson and to immediately leave any area where she inadvertently encountered Watson.

{¶3}   The protection order was still in effect in January 2025, when Watson —while working as a housing specialist for a behavioral-health company — went to Licking Memorial Hospital to pick up a client.  She waited in the parking lot in her personal vehicle — a red pickup truck — which she had owned for about five months.  While waiting, Watson noticed Sherman drive into the parking lot and park less than 500 feet from her.  Watson testified at Sherman's trial that Sherman saw her and that a passenger exited Sherman's vehicle and waved to her.

{¶4}   Watson called 911 and, while waiting for the police to arrive, used her cell phone to take photographs and video footage of Sherman's vehicle.  Watson then left the hospital parking lot in her vehicle.  Sherman, in her own vehicle, followed Watson for a short distance before turning onto a side street.

{¶5}   Later that day, Watson filed a report at the offices of the Newark Division of Police.  Officer Fumi then came to Watson's home to interview her and collect the photographs and videos.  Fumi also spoke with Sherman by telephone that evening.  Sherman told Fumi that she had gone to the hospital to visit a sick relative.  Sherman said that she saw a truck in the parking lot that looked like Watson's, but she was not certain it was Watson's vehicle.  Sherman told the officer that she confirmed that Watson was the driver of the red pickup truck only when Watson began taking videos and photographs.  Sherman said that she then decided to leave and ended up behind Watson on the roadway, after which she turned onto a side street.

{¶6}   Officer Rubio also came to Watson's home to discuss the encounter.  Watson showed Rubio screenshots from Sherman's Facebook account that Watson had received from her aunt.  In those Facebook posts by Sherman, she admitted to being in

the hospital parking lot and seeing Watson there. Sherman said on Facebook that she was at the hospital to visit an ailing relative and that she remained in her car once she saw Watson filming and photographing her. Sherman's online posts were not sent directly to Watson, and Sherman did not ask anyone to share them with Watson.

{¶7} Sherman was charged with one misdemeanor count of violating a protection order. A jury found her guilty on that charge, and Sherman now appeals.

**Sherman's Conviction Was Supported by Sufficient Evidence**

{¶8} In her first assignment of error, Sherman contends that the jury's verdict was not supported by sufficient evidence.

{¶9} "When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Howell*, 2020-Ohio-174, ¶ 28 (5th Dist.), quoting *Pountney* at ¶ 19. A "verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶10} The R.C. 2919.27(A)(1) charge in this case required the State to prove that Sherman recklessly violated the terms of a protection order. And to prove that mental state of recklessness, the State, according to R.C. 2901.22(C), had to show that

Sherman, with heedless indifference to the consequences, disregarded a substantial and unjustifiable risk that her conduct was likely to cause a certain result or was likely to be of a certain nature.

{¶11} The terms of the protection order required Sherman to remain at least 500 feet from Watson and to immediately leave any area where she inadvertently encountered Watson. The State presented evidence indicating that Sherman parked near Watson in the hospital parking lot. Even if Sherman initially did not realize that the red truck belonged to Watson, her statement to Officer Fumi supported the State's view that Sherman knew that Watson was the truck's driver when Sherman chose to follow Watson's vehicle out of the parking lot. Officer Fumi also testified that there were multiple ways to leave the parking lot and that Sherman could have turned in three different directions at an intersection nearby. Instead, Sherman continued to follow Watson through that intersection before turning onto a side street.

{¶12} Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the State proved each element of the offense beyond a reasonable doubt. Sherman's awareness of Watson's presence and her decision to pull directly behind Watson's vehicle at the intersection — despite having other options available — provided sufficient evidence for the jury to conclude that Sherman recklessly violated the terms of the protection order. Sherman's first assignment of error is overruled.

## Sherman's Conviction Was Not Against the Manifest Weight of the Evidence

{¶13} In her second assignment of error, Sherman contends that the trial court's verdict was against the manifest weight of the evidence.

**{¶14}** "In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the 'thirteenth juror,' and after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶15}** "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *State v. Butler*, 2024-Ohio-4651, ¶ 75 (5th Dist.). "'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Williams*, 2024-Ohio-5578, ¶ 61 (5th Dist.) (Bracketed text in original.), quoting *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984). "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

**{¶16}** Sherman's conviction was not against the manifest weight of the evidence. The evidentiary conflict that Sherman points to arises from her statement to Officer Fumi that she was unsure whether the red pickup truck in the parking lot belonged to Watson until Watson began taking photos with a cell phone.

**{¶17}** The additional evidence presented at trial, however, weighs in favor of the prosecution. Even if Sherman was at first unsure about the identity of the person in the

red truck, once Sherman realized that Watson was in fact that person, Sherman chose to leave at the same time and chose not to take an alternative exit route. Sherman had — as Fumi testified — multiple exit options available to her. Despite this, Sherman followed Watson from the parking lot to a traffic light and then continued from there to drive behind Watson before turning onto a side street. Further, Sherman's Facebook posts bolster the State's view that she chose to remain in the parking lot even after she realized that she was within 500 feet of Watson.

{¶18} In reaching a guilty verdict, the jury did not lose its way or bring about a manifest miscarriage of justice. A rational basis exists in the record to support the jury's resolution of any conflicts in the evidence. Sherman's conviction, therefore, was not against the manifest weight of the evidence. Sherman's second assignment of error is overruled.

## The Trial Court's Mistaken Use of an Outdated Jury Instruction Did Not Affect the Outcome of the Trial

{¶19} In her third assignment of error, Sherman contends that the trial court committed plain error by failing to correctly instruct the jury on the mental state of recklessness.

{¶20} Ohio law recognizes a distinction between alleged errors to which a defendant objects at trial and those that he or she fails to raise then. *State v. Jones*, 2020-Ohio-3051, ¶ 17. "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A).

**{¶21}** "When the defendant forfeits the right to assert an error on appeal by failing to bring it to the trial court's attention in the first instance, an appellate court applies plain-error review." *Jones* at ¶ 17, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 21-22; *see also* Crim.R. 52(B). Under a plain-error review, the defendant bears the burden of "'showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice.'" *Id.*, quoting *State v. Quarterman*, 2014-Ohio-4034, ¶ 16. A reviewing court should "notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶22}** Because Sherman did not object to the jury instructions, we review them solely for plain error.

**{¶23}** The trial judge instructed the jury as follows:

> [A] person acts recklessly when, with heedless indifference to the consequences, she perversely disregards a known risk that her conduct is likely to cause a certain result or be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, she perversely disregards a known risk that such circumstances are likely to exist.

**{¶24}** That instruction, employing language that was removed from R.C. 2901.22(C)'s definition of recklessness in 2015, was outdated. Under the current version of the statute that took effect 10 years ago, a person is reckless when he or she

"disregards a substantial and unjustifiable risk." Gone from the current statutory definition of recklessness is any reference to "perversely disregard[ing] a known risk."

{¶25} Of course, the trial court should have instructed the jury on the current definition of recklessness rather than using the outdated version. Yet, Sherman has failed to demonstrate that the outcome of her trial clearly would have been different had the correct instruction been given.

{¶26} In our view, the evidence supported Sherman's conviction under both the former and current definitions of recklessness. Sherman was aware of Watson's presence and made a conscious decision to remain in the parking lot when she thought that the red truck might have belonged to Watson. Even after that, Sherman followed Watson to a traffic light and beyond despite knowing that Watson was in fact in that truck. This conduct demonstrated — at minimum — a disregard of a risk, whether that risk was a known risk or a substantial and unjustifiable one. *See State v. Pulley*, 2023-Ohio-3277, ¶ 120 (2d Dist.) (finding no prejudice where the trial court gave the same outdated jury instruction for recklessness).

{¶27} Sherman has not shown that the erroneous jury instruction affected her substantial rights or that the error created a manifest miscarriage of justice. The evidence supporting Sherman's conviction was substantial, and the record demonstrates that the jury's verdict would not have been different had the trial court used the correct definition from R.C. 2901.22(C). Sherman's third assignment of error is overruled.

**{¶28}** For the reasons explained above, the judgment of the Licking County Municipal Court is affirmed.  Costs are to be paid by Appellant Misty M. Sherman.


By: Gormley, J.;

Hoffman, P.J. and

Popham, J. concur.