[Cite as *State v. Hane*, 2025-Ohio-120.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 2024CA00039 |
| | : | |
| CHRISTOPHER HANE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Stark County Court of
                                  Common Pleas, Case No. 2023 CR
                                  2479


JUDGMENT:                         AFFIRMED


DATE OF JUDGMENT ENTRY:           January 17, 2025


APPEARANCES:


For Plaintiff-Appellee:                 For Defendant-Appellant:

KYLE STONE                              D. COLEMAN BOND
STARK CO. PROSECUTOR                    116 Cleveland Ave. NW
VICKI L. DESANTIS                       Suite 600
110 Central Plaza South, Ste. 510       Canton, OH 44702
Canton, OH 44702-1413

*Delaney, P.J.*

{¶1} Appellant Christopher Hane appeals from the February 14, 2024 Judgment Entry of the Stark County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} This case arose on August 7, 2023, when appellant overdosed in the basement of the home he shared with his girlfriend, Jane Doe. At the time, appellant was babysitting three children, ages 10, 3, and 16 months, and the children were otherwise alone in the home during the overdose episode.

{¶3} Jane Doe and appellant were in a four-year relationship and had two children together, a 3-year-old and a 16-month-old. The two children have appellant's last name but his name is not on their birth certificates and he was not ordered to provide maintenance or support for the children. Jane also has an older child with her ex-husband, Mary Doe, age 10, who lived with the family at the home.

{¶4} Appellant does not have a driver's license. On August 7, 2023, around 4:00 p.m., appellant called Jane from his job at a pizza shop and asked her to pick him up early because he fell and hit his head. Jane picked appellant up and asked if he wanted to go to the hospital but he refused; in her words, he seemed "spacey." Jane spoke with the owner of the pizza shop who was unaware appellant purportedly fell and hit his head. Jane did not observe any visible injury to appellant.

{¶5} Jane brought appellant home and left for her own workplace soon after. Jane testified she made the calculated decision to go to work because Mary, the 10-year-old, was home and Jane could check in with Mary if necessary.

{¶6} Jane texted appellant several times and called about an hour later, but appellant did not answer. Jane then called Mary and asked her to check on appellant. Mary called back a short time later, stating appellant was in the basement and appeared to be "dead." Jane called her sister, who lived nearby, and asked her to go to the house. The sister arrived, found appellant in the basement, and called 911. Jane returned home to find police on the scene.

{¶7} Over appellant's continuing objection, Jane Doe testified she knew appellant attended drug treatment in the past.

{¶8} Jane acknowledged she left appellant in the home with the three young children. She described the home as "pretty safety-proofed, kid-proofed," but didn't know where the children were in the house while appellant was in the basement. When she arrived at the home and met police, she was anxious to enter the house immediately to ensure the children had not ingested drugs or otherwise been harmed. Police told Jane drugs were recovered from the scene.

{¶9} Mary Doe testified at trial and recalled the day police came to her house. Her mother had called and asked her to find appellant, who was in the basement. Mary went to look for him and found him laying down, with his legs splayed, not moving. Mary believed appellant might be dead. She called her mother and her aunt arrived a short time later. Mary testified that while she was looking for appellant, her siblings were on the main floor of the house.

{¶10} Ptl. Chambliss of the Massillon Police Department responded to a possible overdose at the house and arrived to find medics already on the scene. The apparent overdose occurred in the basement, which he accessed from an exterior door. Chambliss

observed medics administer Narcan to the overdose patient, identified as appellant. Chambliss testified Narcan reverses the effect of opioid use and has no effect if the patient hasn't used opioids. Upon administration of Narcan, appellant got up, breathing heavily, sweating, and mumbling incoherently.

{¶11} Chambliss observed three children in the home and appellant was the only adult present. Officers located a brown substance in a paper bindle, believed to be heroin, on a dryer near appellant's position in the basement. The substance was seized, submitted to the crime lab, and determined to be fentanyl.

{¶12} Appellant was charged by indictment with one count of child endangering pursuant to R.C. 2919.22(A) and (E)(2)(b), a felony of the fourth degree [Count I] and one count of drug possession pursuant to R.C. 2925.11(A) and (C), a misdemeanor of the first degree. Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Prior to trial, appellant stipulated he has a prior conviction of child endangering and the substance found near him in the basement of the residence was fentanyl.

{¶13} Appellant moved for judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. The jury found appellant guilty as charged. Following a pre-sentence investigation, appellant was sentenced to, e.g., a prison term of 18 months on Count I and a jail term of 30 days on Count II, to be served concurrently.

{¶14} Appellant now appeals from the judgment entry of his convictions and sentence.

{¶15} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶16} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTIONS MUST BE REVERSED."

{¶17} "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AND MUST BE REVERSED."

**ANALYSIS**

I., II.

{¶18} Appellant's two assignments of error are related and will be considered together. Appellant argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶19} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶20} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶21} Appellant challenges his conviction upon one count of child endangering pursuant to R.C. 2919.22(A) and (E)(2)(b), which state:

> (A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age … shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. ….
>
> (E)(1) Whoever violates this section is guilty of endangering children.
>
> (2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in the circumstances described in division (E)(2)(e) of this section, that division applies:
>
> ….

>> (b) If the offender previously has been convicted of an offense
>> under this section or of any offense involving neglect, abandonment,
>> contributing to the delinquency of, or physical abuse of a child,
>> except as otherwise provided in division (E)(2)(c) or (d) of this
>> section, a felony of the fourth degree[.]

{¶22} Appellee was required to prove that appellant: (1) was the parent, guardian, custodian, person having custody or control, or person in loco parentis of the children; (2) recklessly created a substantial risk to the health or safety of the children; and (3) created that risk by violating a duty of protection, care or support. *State v. Shannon*, 2017-Ohio-31, ¶ 25 (5th Dist.). To satisfy the second element, recklessness must create a "substantial risk" to the health and safety of the child; a "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result or circumstance may occur." *Id.*, ¶ 28, citing R.C. 2901.01(A)(8).

{¶23} Appellant first argues appellee failed to prove he was the "parent, guardian, custodian, person have custody or control, or person in loco parentis of the children" on the date of the overdose. The term "in loco parentis" means "charged, factitiously, with a parent's rights, duties, and responsibilities;" a person in loco parentis has assumed the same duties as a guardian or custodian, only not through a legal proceeding. *In re K.K.E.*, 2020-Ohio-6723, ¶ 17 (5th Dist.), citing *State v. Noggle*, 1993-Ohio-189, superseded on other grounds.

{¶24} Appellant argues he is not named on the children's birth certificates and is not the subject of an order of maintenance or support for the children. Jane Doe's uncontroverted testimony established appellant is the biological father of the two

youngest children. Financial support "is not solely determinative of a person's status as in loco parentis" and "[a] close, supportive, and protective in loco parentis relationship need not include provision for the material needs of the child." *State v. Abubakar*, 2011-Ohio-6299, ¶ 10 (10th Dist.). The two youngest children had appellant's surname; he lived in a familial relationship with the children and their mother in the household for four years; and was the sole adult present with three young children when he overdosed. We are satisfied appellee established appellant was in loco parentis, at minimum, of the minor children at the time of the offense.[1]

{¶25} Appellant further argues he did not create a substantial risk to the children's health or safety by violating a duty of care, protection, or support because he suffered from a head injury which caused his incapacitation in the basement. The only evidence of the head injury is appellant's statement to Jane Doe when she picked him up early from work; appellant's boss was unaware of the purported fall, appellant had no visible injuries, and he declined medical attention. Even if appellant sustained a head injury earlier that day, the evidence at trial supported appellee's position that appellant overdosed on fentanyl while responsible for three young children. The record demonstrates a bindle of fentanyl was found in close proximity to appellant where he was splayed out and appeared "dead" in the basement, and he responded to the administration of Narcan, indicating he was under the influence of an opioid.

---

[1] Appellant also argues in the context of his second assignment of error [manifest weight of the evidence] that appellee's comments during rebuttal about the definition of *in loco parentis* confused the jury. There was no objection to the comments at trial and in the context of the manifest weight of the evidence, we do not find the prosecutor's comments to have misled the jury.

{¶26} The evidence at trial established appellant entered the basement, which was accessible only from outside the residence, and overdosed on fentanyl. This episode left three young children alone in the house. "The risks involved in leaving small children unsupervised are common knowledge." *State v. Cuffee*, 2017-Ohio-598, ¶ 22 (5th Dist.), quoting *State v. Walton–Kirkendoll*, 2017–Ohio–237, ¶ 10 (9th Dist.), internal citation omitted.

{¶27} Appellant's child endangering conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Both assignments of error are overruled.

## CONCLUSION

{¶28} Appellant's two assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Gwin, J. and

Wise, J., concur.