[Cite as *State v. Bernardo*, 2025-Ohio-1399.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| CAMERON L. BERNARDO | : | Case No. 2024 CA 00088 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:                Appeal from the Licking County
                                        Court of Common Pleas, Case No.
                                        2024 CR 00140


JUDGMENT:                               Affirmed


DATE OF JUDGMENT:                       April 17, 2025


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

Kenneth W. Oswalt                       Brian A. Smith
Assistant Prosecuting Attorney          123 South Miller Road
20 South Second Street, 4th Floor       Suite 250
Newark, Ohio 43055                      Fairlawn, Ohio 44333

*Gormley, J.*

**{¶1}** Defendant Cameron L. Bernardo was convicted of attempted murder and felonious assault at a bench trial in Licking County after the trial judge concluded — based on the views of two experts — that Bernardo had failed to prove his affirmative defense of insanity. Bernardo now appeals, contending that the trial judge misinterpreted the experts' conclusions. Finding that the trial judge's interpretation was supported by the weight of the evidence, we now affirm.

## Facts and Procedural History

**{¶2}** In February 2024, Bernardo visited the home of his grandmother to wash his laundry. His mother and his mother's boyfriend also happened to be staying at the home at that time. Bernardo, believing that his family was abusing his daughter, started arguing with his mother.

**{¶3}** Bernardo then attacked his mother with a pocketknife, stabbing her once in the head, once in the neck, and multiple times in the chest and arms. His mother managed to escape the attack and call for help, and she survived her wounds.

**{¶4}** Bernardo left the home on foot and was apprehended by police officers several blocks away. Police found a bloody knife in Bernardo's pocket and saw blood on his hands, clothing, and chest. Bernardo told the officers that he had stabbed his mother.

**{¶5}** Bernardo was charged with attempted murder and felonious assault. He pled not guilty by reason of insanity, and the trial judge ordered that a psychological evaluation be done. That evaluation was performed by psychologist Emily Weber, who concluded that, because of symptoms of a severe mental disease, Bernardo likely did not understand the wrongfulness of his actions at the time he attacked his mother. Weber's

written report noted that she was unable to determine the cause of those symptoms, but her report did indicate that Bernardo's symptoms were consistent with voluntary intoxication.

{¶6}  Bernardo requested, and the trial judge ordered, a second psychological evaluation.  That evaluation, performed by psychologist Amanda Conn, also indicated that, due to psychotic symptoms, Bernardo likely did not understand the wrongfulness of his actions at the time of the attack.  Like the Weber evaluation, the Conn evaluation noted that the psychotic symptoms could have been the result of chemically induced voluntary intoxication.

{¶7}  The case proceeded to a bench trial, where the parties agreed on the facts and the admissibility of the two experts' reports. Neither party offered witness testimony at the trial, and both Bernardo and the state recommended that the trial judge find Bernardo not guilty by reason of insanity.  The trial judge, however, concluded that Bernardo had failed to meet his burden of proof on that affirmative defense, and the judge found Bernardo guilty of both attempted murder and felonious assault.  Bernardo now appeals.

## Bernardo's Conviction Was Not Against the Manifest Weight of the Evidence

{¶8}  In his sole assignment of error, Bernardo contends that his conviction was against the manifest weight of the evidence because, according to him, the trial judge incorrectly weighed the Weber and Conn evaluations.

### A. The Manifest-Weight Standard of Review

{¶9}  "In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the 'thirteenth juror,' and after 'reviewing the

entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶10}** "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *State v. Butler*, 2024-Ohio-4651, ¶ 75 (5th Dist.). "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

**{¶11}** "'The weight to be given the evidence and the credibility of the witnesses who provide opinions regarding the defense of insanity in a criminal proceeding are primarily for the trier of fact.'" *State v. Fenderson*, 2010-Ohio-2240, ¶ 37 (5th Dist.), quoting *State v. Curry*, 45 Ohio St.3d 109, 114 (1989). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *State v. Williams*, 2024-Ohio-5578, ¶ 62 (5th Dist.), quoting *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, fn 3 (1984).

### B. The Not-Guilty-by-Reason-of-Insanity Defense

**{¶12}** Under Ohio law "[a] person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves . . . that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14). Insanity is an affirmative

defense that must be proved by the defendant by a preponderance of the evidence. *State v. McConnell*, 2021-Ohio-41, ¶ 21 (5th Dist.), citing *State v. Eick*, 2011-Ohio-1498, ¶ 29 (5th Dist.).

{¶13} "Where the insanity is simply a temporary condition brought on by the voluntary ingestion of drugs or alcohol, it does not suffice to establish an NGRI defense." *State v. Swanson*, 2014-Ohio-549, ¶ 14 (6th Dist.). *See also State v. Toth*, 52 Ohio St.2d 206, 210 (1977) ("It is a well-established rule in Ohio that the defense of insanity cannot be successfully established simply on the basis that the condition resulted from the use of intoxicants or drugs, where such use is not shown to be habitual or chronic").

### C. The Trial Judge Had a Rational Basis to Conclude That Bernardo Did Not Establish the Defense of Insanity

{¶14} The weight of the evidence at Bernardo's bench trial supports the trial judge's conclusion that Bernardo's mental condition at the time of the attack was caused by voluntary intoxication rather than a severe mental disease or defect.

{¶15} We note, at the outset, that the Weber and Conn evaluations were inconclusive as to the cause of Bernardo's mental condition at the time of the attack. The Weber report, which explained that "the weight of the data suggest[s] [that symptoms of a severe mental disease] **resulted in him not knowing the wrongfulness** of [his] acts[,]" noted that "what best accounts for those symptoms remains in question." (Emphasis in original.) The Conn evaluation, too, concluded that "Mr. Bernardo did not understand the wrongfulness of his actions due to the psychotic symptoms he was experiencing at the time of the alleged offenses[,]" but the report noted that the cause of those psychotic symptoms was unclear.

{¶16} Both evaluations, however, indicated that substance use was a plausible explanation for Bernardo's symptoms. The Weber evaluation states that "the acuity and nature of [Bernardo's] symptoms are consistent with known phenomenology of stimulant-induced (or perhaps exacerbated, in the defendant's case) psychotic symptoms. Given his long history of methamphetamine use, **voluntary intoxication exclusions may warrant consideration**." (Emphasis in original.) The Conn evaluation states that "there is some evidence that his psychotic symptoms were substance induced rather than related to a true mental illness."

{¶17} At the time Bernardo attacked his mother, he was experiencing symptoms of a severe mental disease. Police reports and witness statements from the day of the stabbing indicated that he was agitated, erratic, accusatory, and held beliefs and described experiences that were not based in reality. His thought process was illogical, disorganized, and difficult to follow, and his mood shifted quickly. Dr. Weber noted that methamphetamine, in particular, is known to induce the type of psychotic symptoms that Bernardo displayed.

{¶18} By the time his mental-health evaluations were performed, however, Bernardo's symptoms had largely dissipated. Bernardo was arrested and held at the Licking County Justice Cener for two to three months before he met with the two psychologists. Bernardo did not receive any mental-health treatment during that time. At his evaluation with Dr. Weber, Bernardo was alert and oriented, he had an intact factual understanding of the court proceedings that he was involved in, his emotions were not expansive, his speech was coherent and even in tone, and his behavior was not violent or aggressive. At his evaluation with Dr. Conn, Bernardo similarly had a logical thought

process, a stable mood, and exhibited no disorganized behavior or emotional dysregulation.

{¶19} Both doctors indicated that Bernardo's changed condition between the time of the alleged offenses and time of his evaluations was indicative of underlying substance use. Dr. Weber, in concluding her report, stated that "[i]n my opinion, despite being limited by the lack of objective data, the abrupt shift in severity without medication would strongly suggest the role of substances." She stated that, based on her experience, she "would not expect the aforementioned symptoms to resolve on their own without treatment." Dr. Conn, too, noted that "it is uncommon for such symptoms to resolve without mental health treatment if they are truly related to a psychotic disorder. However, it is not uncommon for psychotic symptoms to resolve quickly when they are related to substance use as they typically resolve once the drug has been metabolized."

{¶20} The conclusion that Bernardo's behavior at the time of the attack was the result of voluntary intoxication was also corroborated by other evidence in the record. When Bernardo was taken to the police station after the incident, though he was not drug tested, he told officers that he used "lots of street drugs" and stated that he had been high frequently throughout the past month. Emily Ramsey — a woman with whom Bernardo was staying at the time of the alleged offenses — relayed to Dr. Weber that, on the evening before the attack, Bernardo appeared to her to be intoxicated because he smelled like alcohol and was slurring his speech. Bernardo acknowledged consuming alcohol and smoking marijuana in the days prior to the stabbing.

{¶21} Bernardo also has a history of methamphetamine abuse. In 2022, he was charged with a different crime to which he pled not guilty by reason of insanity. At that

time, Bernardo was evaluated by Dr. Weber, who concluded then that methamphetamine use was the most likely cause of Bernardo's behavior. In the current case, Bernardo told Dr. Weber that he "may have used" methamphetamine the week before the attack, and he was known among friends and family as a regular drug user.

{¶22} Both psychologists noted that voluntary drug use was a possible cause of Bernardo's behavior. The trial judge, finding evidence in the record that corroborated this view, was unpersuaded that Bernardo had met his burden. Viewing the evidence in the record consistently with the trial court's judgment, we find that a rational basis exists to support that judgment, and we affirm Bernardo's convictions. His sole assignment of error is overruled.

By: Gormley, J.

Hoffman, P.J. and

Montgomery, J. concur.