[Cite as *State v. Lovell*, 2026-Ohio-169.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 25CA00040 |
| Plaintiff - Appellee | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas of Licking County, Case No. 25CR85 |
| NICHOLAS C. LOVELL, | |
| Defendant - Appellant | Judgment: Affirmed |
| | Date of Judgment: January 20, 2026 |

BEFORE: William B. Hoffman; Andrew J. King; David M. Gormley, Judges

APPEARANCES: Kenneth W. Oswalt, Licking County Prosecuting Attorney's Office, Newark, Ohio, for Plaintiff-Appellee; Elizabeth A. Mote, Columbus, Ohio, for Defendant-Appellant.

*Gormley, J.*

**{¶1}** Defendant Nicholas C. Lovell raises sufficiency-of-the-evidence and manifest-weight challenges to his domestic-violence conviction. Lovell also alleges error in the trial court's response to a question submitted by the jury during its deliberations. For the reasons explained below, we affirm Lovell's conviction.

**<u>The Key Facts</u>**

**{¶2}** On February 11, 2025, a concerned neighbor called for the assistance of law enforcement after hearing a verbal altercation between Lovell and B.H. That neighbor reported that she had seen B.H. standing outside barefoot, wearing shorts, and holding a baby covered by a blanket. When law-enforcement officers arrived at the scene, B.H. — an adult woman — was still standing outside.

**{¶3}** In speaking with B.H., law-enforcement officers learned that B.H. and Lovell had a dating history and had a son together. B.H. acknowledged to the officers that she and Lovell had argued at Lovell's residence that day. Although B.H. had exited the home after the disagreement had started, the verbal jousting continued outside, B.H. explained, until Lovell walked away from the home.

**{¶4}** While officers were speaking with B.H., Lovell's mother arrived at the residence. She said that Lovell had called her and had asked her to take B.H. and the child to B.H.'s home. At the request of a law-enforcement officer, Lovell's mother then called Lovell, who agreed to the officer's request that he return to the residence.

**{¶5}** While speaking with the officers that day, B.H. initially did not say anything about Lovell having hit her. Once Lovell had returned to the residence, though, and once an officer told B.H. that Lovell was claiming that B.H. had thrown electric hair clippers at him, then B.H. told the officer that Lovell had punched her in the legs and arms and had struck her in the face with the back of his hand. B.H. proceeded to show the law-enforcement officers some red marks on her body and a cut on her lip.

**{¶6}** The county grand jury approved an indictment charging Lovell with a third-degree-felony domestic-violence offense. After a jury trial, Lovell was convicted on that charge. He now appeals.

## The Trial Court Did Not Provide a Misleading Answer to the Jury's Question

**{¶7}** In his first assignment of error, Lovell contends that the trial court provided a misleading answer to a question posed by the jury during its deliberations.

**{¶8}** Although B.H. told law-enforcement officers on February 11, 2025 that Lovell caused her physical harm by hitting her, she later informed the county prosecutor's

office that she no longer stood by her statement and did not want that office to pursue the charge against Lovell.  When B.H. became an uncooperative witness, the State issued a material-witness warrant to secure her attendance at trial.  The State believed — based on recorded phone calls from the jail and correspondence between B.H. and Lovell — that Lovell was encouraging B.H. to either not show up to testify at the trial or to lie or "plead the Fifth" if she did testify.

{¶9}    The following trial-testimony excerpts provide context for the jury's question.  B.H. testified on direct examination that Lovell punched her in the leg and "mushed" her face.  The State played a video from a law-enforcement officer's body-worn camera to refresh B.H.'s recollection that she had also told the officer that Lovell "backhanded" her in the face.  When the State asked B.H. if what she had told the law-enforcement officers and what she had said in court was the truth, B.H. responded that it was.

{¶10}  The State then asked B.H. if she had testified in front of the grand jury, and she responded that she had.  The State next asked B.H. if she, in her grand-jury testimony, had told "the same story" that she had told in the courtroom.  Defense counsel objected before B.H. answered, and the trial judge sustained the objection and instructed the jury to disregard the question.  The trial court also advised the State to refrain from trying to bolster B.H.'s trial testimony with her grand-jury testimony.

{¶11} During the cross-examination of B.H. that followed, defense counsel questioned B.H. about emails that she had sent to the prosecutor's office in which she had indicated her unwillingness to testify at the trial.  B.H. testified that it was her idea to "plead the Fifth" and that Lovell had not advised her to skip the trial.

{¶12} On redirect examination, the State questioned B.H. about her telephone conversations with Lovell while he was in jail. The State inquired whether Lovell had told her to "plead the Fifth" or to lie in her testimony at trial. B.H. acknowledged that she had informed Lovell on the phone that she had previously testified under oath before the grand jury, and the State then asked B.H. whether Lovell "was essentially telling you to commit perjury." B.H. disputed that suggestion, explaining that instead Lovell "was just throwing things out" that she could do. The State then asked if B.H. knew that testifying under oath and then testifying differently under oath a second time could be considered perjury, and B.H. answered affirmatively. Defense counsel objected to this line of questioning, but the trial court overruled the objections and allowed B.H.'s testimony to stand.

{¶13} Once all testimony had concluded and once the jury had been instructed on the charge, deliberations began. After almost three hours of deliberations, the jury presented the following written question to the trial court: "Was [B.H.] under threat of perjury charges if she had recanted or contradicted her testimony from the police report while under oath on 5/28/2025?" (The trial had begun on that date.)

{¶14} The trial judge, on the record and outside the presence of the jury, shared the question with counsel and then expressed the view that the answer to the question should be "no" because B.H. was not under oath when she spoke with law-enforcement officers. Defense counsel agreed, saying that B.H. had provided no testimony to the officers and so she could not be charged with perjury if she contradicted during the trial whatever she might have conveyed to the officers orally or in writing several months earlier. Defense counsel did ask the trial judge, though, to provide more detail to the jury about why the answer to the question was "no." The judge then expressed his reluctance

to add anything else because "no" was, in his view, the correct answer to the specific question that the jury had posed. The judge told the attorneys that he believed he ought to wait for the jury's next question — if one were forthcoming — rather than speculating about what else the jury wanted to know.

{¶15} Once that discussion between the trial judge and the lawyers — with Lovell also present — had wrapped up, the judge informed the jury that the answer to the question was "no." Approximately 45 minutes later, the jury found Lovell guilty on the domestic-violence charge.

{¶16} A trial court has discretion to determine whether to answer a question from the jury. *State v. Cutlip*, 2022-Ohio-3524, ¶ 115–116 (7th Dist.). "A reversal of a conviction based upon a trial court's response to a question of law posed by the jury requires a showing that the trial court abused its discretion." *State v. Brown*, 2000 Ohio App. LEXIS 1430, *39–40 (11th Dist. Mar. 31, 2000), citing *State v. Carter,* 72 Ohio St.3d 545, 553 (1995). An abuse of discretion is more than a mere error of law; "it implies that the court's attitude is unreasonable, arbitrary[,] or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶17} The trial court and counsel for Lovell and for the State all interpreted the jury's question as an inquiry whether B.H. could be subject to a perjury charge if her testimony at trial contradicted her statement to law-enforcement officers. Even Lovell's counsel agreed that the correct answer to the jury's question was "no," but that attorney requested that the trial judge "provide a little more detail as to why the answer is no." The trial judge declined to embrace that suggestion because doing so would push beyond

what the jury had asked and would perhaps require the judge to speculate about other questions that the jury might pose next.

{¶18} After examining the jury's question and the judge's on-the-record discussion about it with the attorneys, we see no abuse of discretion by the trial judge in his response. The judge rightly determined — with the concurrence of counsel for both sides — that B.H. was not under oath when she spoke with law-enforcement officers and provided a written statement to them three months before the trial, and any at-trial recanting or contradicting by her could not be the basis for a perjury charge. This court has previously held that "'[u]nsworn statements that conflict with later sworn statements are insufficient to support a charge of perjury.'" *State v. Gheen*, 2024-Ohio-4649, ¶ 18 (5th Dist.), quoting *State v. Hoague*, 2018-Ohio-5380, ¶ 57 (5th Dist.). The trial court's answer to the jury question was a correct statement of the law and, therefore, was not misleading.

**Lovell's Conviction Was Supported by Sufficient Evidence**

{¶19} In his second assignment of error, Lovell argues that the State failed to present sufficient evidence to support his conviction on the domestic-violence charge.

{¶20} "When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Howell*, 2020-Ohio-174, ¶ 28 (5th Dist.), quoting *Jenks* at paragraph two of the

syllabus. A "verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶21} To prove the R.C. 2919.25(A) charge of domestic violence, the State was required to introduce evidence that Lovell "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." Lovell was charged with a third-degree felony because the State alleged that he had previously pled guilty to or been convicted of two or more offenses of domestic violence. R.C. 2919.25(D)(4).

{¶22} Lovell does not specify which element of the offense he believes the State failed to address at trial. Rather, he claims that B.H.'s desire that the State dismiss the case, when coupled with the fact that the State felt compelled to issue a material-witness warrant to secure her attendance at trial, equates to a failure by the State to offer legally sufficient evidence on one or more elements of the offense.

{¶23} Relevant to this case, "family or household member" means a person living as a spouse or the natural parent of any child of whom the offender is the other natural parent. R.C. 2919.25(F)(1)(a)(i) and (b). A "person living as a spouse" means a person who cohabitated with the offender within five years prior to the date of the alleged offense. R.C. 2919.25(F)(2).

{¶24} B.H. and Lovell had an on-and-off relationship, sometimes living together for several years. The undisputed testimony at trial was that B.H. and Lovell had been dating in the months before the February 2025 incident, although their relationship status at the time of the alleged offense was unclear. B.H. and Lovell also share a child.

**{¶25}** Whether we look to the living-as-a-spouse prong of the definition or to the natural-parent-of-any child provision, we readily conclude that the evidence presented at trial was sufficient to prove that B.H. was indeed a family or household member.

**{¶26}** R.C. 2901.01(A)(3) defines "physical harm" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Ohio courts have held that even "'[t]he slightest injury is sufficient proof of physical harm for purposes of R.C. 2919.25(A).'" *State v. Williams*, 2023-Ohio-4456, ¶ 15 (6th Dist.), quoting *State v. Baxter*, 2019-Ohio-4855, ¶ 9 (1st Dist.). And the State is not required to prove that the victim has sustained actual injury because a defendant can be convicted of domestic violence for merely attempting to cause harm to a family or household member. *State v. Spade*, 2009-Ohio-2004, ¶ 26 (5th Dist.).

**{¶27}** B.H. testified at trial that she and Lovell were arguing on February 11, 2025 and at one point Lovell punched her approximately three times in her leg and "mushed" her face, which caused her lip to split. Photographs were taken of B.H.'s legs and arms on that date and again approximately two weeks later. The photographs showing the bruising were admitted as exhibits at the trial. The video from a deputy's body-worn camera was also played, and in that video B.H. states that Lovell backhanded her in the face. B.H. acknowledged in her trial testimony that what she told the officers was the truth.

**{¶28}** At some point after the February 2025 incident, B.H. backtracked in her support for the State's case against Lovell. B.H. contacted the county prosecutor's office several times and requested that the case against Lovell be dropped. B.H. advised the prosecutor's office that she no longer stood by the statement that she had given to law-

enforcement officers and that she did not consent to her statement being used in any criminal trial against Lovell. The State in turn filed pretrial motions seeking and securing the issuance of a material-witness warrant for B.H., asking that B.H.'s statements to law-enforcement officers be admitted under the forfeiture-by-wrongdoing exception to the Confrontation Clause and the hearsay exception in Evid.R. 804(B)(6), requesting permission to use the transcript of B.H.'s grand-jury testimony, and asking the court to call B.H. as the court's own witness under Evid.R. 614(A). B.H. ultimately appeared and testified at the trial, and the trial court did not grant the State's request to introduce B.H.'s prior statements or her grand-jury testimony.

{¶29} The gist of B.H.'s emails to the prosecutor's office was discussed during the trial. B.H. testified that her communication with the prosecutor's office accurately reflected how she currently felt: she no longer wanted to cooperate with the State's prosecution of the charge against Lovell. But "a victim's recantation is simply a matter of credibility for the jury to consider." *State v. Gilcreast*, 2011-Ohio-2883, ¶ 13 (9th Dist.). "It is within the province of the finder of fact to reject a witness'[s] trial testimony and choose to believe, instead, the witness'[s] original statements to the police." *Id*.

{¶30} Although B.H. was recalcitrant about the State pursuing the domestic-violence charge against Lovell, B.H.'s testimony at trial — as well as the photographs and the testimony from law-enforcement officers — was sufficient to establish the "cause or attempt to cause physical harm" element of the offense.

{¶31} Finally, counsel for the State and Lovell signed a written stipulation that Lovell did in fact have on his criminal record two prior convictions for domestic violence,

and of course it was those that enhanced the charge in this case to a felony of the third degree.  That stipulation was admitted as an exhibit at the trial.

{¶32}  After viewing the evidence in a light most favorable to the prosecution, we find that the State presented sufficient evidence at Lovell's trial on each element of the domestic-violence charge.

**The Jury's Verdict Was Not Against the Manifest Weight of the Evidence**

{¶33}  In his third assignment of error, Lovell contends that his conviction was against the manifest weight of the evidence.

{¶34}  In determining whether a conviction was against the manifest weight of the evidence, an appellate court acts "as a 'thirteenth juror,' and after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be [reversed] and a new trial ordered.'"  *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).  The reversal of a conviction on manifest-weight grounds should occur only in "the 'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶35}  "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.'" *Thompkins* at 387 (emphasis in original).  "[A]n appellate court will leave the issues of

weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

**{¶36}** Lovell argues that the jury gave improper weight to B.H.'s testimony at trial. Lovell focuses on B.H.'s testimony that she felt pressured on the day of the alleged crime to give a statement to law-enforcement officers, that she no longer stood by her statement, and that she appeared at trial subject to a material-witness warrant. Lovell also calls into question B.H.'s credibility by pointing out inconsistencies in her testimony.

**{¶37}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. As a reviewing court, we cannot reverse a decision simply because we hold a different opinion concerning the credibility of witnesses and other evidence submitted at trial. *State v. Razey*, 2023-Ohio-4190, ¶ 34 (5th Dist.).

**{¶38}** As explained above, despite her reluctance to cooperate with the State, B.H. did testify that Lovell punched her in the leg and "mushed" her face. She also acknowledged that he had "backhanded" her in the face. Photographs of her injuries were shown at trial too.

**{¶39}** The jury also had the opportunity to watch video from the law-enforcement officer's body-worn camera. The jury was able to view the circumstances surrounding B.H.'s decision to inform the officers that Lovell had caused her physical harm and could weigh the believability of B.H.'s testimony at trial that she felt pressured to make that statement. And "[t]he jury, as the trier of fact, is free to believe all, part[,] or none of the testimony of any witness who appears before it." *State v. Vogelsong*, 2025-Ohio-5107, ¶ 33 (5th Dist.).

**{¶40}** After reviewing the entire record and after weighing the evidence and all reasonable inferences as a thirteenth juror, including the credibility of witnesses, we cannot reach the conclusion that the jury, as the trier of fact, lost its way and created a manifest miscarriage of justice.

**{¶41}** For these reasons, the judgment of the Court of Common Pleas of Licking County is affirmed.  Costs are to be paid by Defendant Nicholas Lovell.

By: Gormley, J.;

Hoffman, P.J. and

King, J. concur.